PILSON v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 18, 1918.)

No. 155.

1. POST OFFICE ⟨⟩48(2)—UNMAILABLE MATTER—INDICTMENT.

An indictment, alleging that defendant, in violation of Criminal Code (Act March 4, 1909, c. 321) § 211, 35 Stat. 1129 (Comp. St. 1916, § 10381), deposited in the mails a letter and circular giving information where, how, and from whom and by what means contraconceptives might be obtained, which set forth the entire transaction in detail and the letter, but did not set forth the circular, with sufficient certainty advised defendant of the offense, and was not open to attack because not setting forth the circular in extenso, for defendant, if desirous, might have obtained a copy by application for bill of particulars.

2. CRIMINAL LAW ⟨⟩1043(2)—APPEAL—OBJECTIONS—SUFFICIENCY.

Though an indictment, charging that defendant deposited in the mails a letter and circular giving information as to the obtaining of contraconceptives, was attacked for lack of reasonable certainty, the objection that the circular was not set out in extenso was not raised, so as to justify review, since, if that was the basis of the objection, it should have been stated more definitely.

3. POST OFFICE ⟨⟩49—OFFENSES—EVIDENCE—SUFFICIENCY.

In a prosecution for violating Criminal Code, § 211, by depositing in the mails a letter and a circular giving information as to where, how, and from whom contraconceptives could be obtained, evidence *held* sufficient to warrant a conviction.

4. CRIMINAL LAW ⟨⟩402(2)—EVIDENCE—SECONDARY EVIDENCE.

Where defendant testified that in response to a subpœna duces tecum he had produced all correspondence before the grand jury and asserted that he did not receive decoy letters, in response to which it was contended he deposited in the mails nonmailable matter, secondary evidence of such decoy letters was properly received, though the government served no notice to produce.

In Error to the District Court of the United States for the Southern District of New York.

Joseph H. Pilson was convicted of violation of Criminal Code, § 211, by depositing in the mails a letter and circular giving information where, how, and from whom, and by what means, might be obtained articles intended for the prevention of conception, and he brings error. Affirmed.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The indictment consisted of two counts, upon the first of which a verdict of not guilty was rendered, and the second of which alleged that the defendant upon a date stated unlawfully deposited, or caused to be deposited, nonmailable matter in a branch post office of the city of New York, the said matter consisting of a letter given in extenso and referring to a circular which gave information where, how, and from whom and by what means might be obtained articles intended for the prevention of conception and to produce abortion. Upon the trial it was proved that the defendant, a printer by trade, was the owner of 98 out of 100 shares of a New York corporation called "the Vital Fire Remedy Company." This corporation did business in the city of New York, and was under the general direction of the defendant, though the immediate charge of the business was under one Wright, who was employed by the defendant. Two decoy letters were sent to the Vital Fire Remedy Company by a post office inspector, requesting information concerning the sale of "Tansy Pills," which had been advertised by the corporation. The first letter stated that the subscriber was pregnant, could not afford any more children, and wished these pills to be relieved of her condition. Wright, in answer to this letter, signed and sent a letter, inclosing the circular for special treatment, and stating that it would explain what the writer asked. This circular did not directly refer to the prevention of conception, but stated that, if the Tansy Pills failed to establish normal conditions in the patient, a certain preparation of binoxide of manganese would prove effective where all remedies failed. In answer to this another decoy letter of similar import was written, inclosing $3.10 for a package of binoxide of manganese pills. This letter the defendant personally opened and cashed the money order. He also addressed a package of pills to the subscriber of the decoy letter.

The defendant in his defense swore that he had instructed Wright, in case of all correspondence of the sort in question, to refer the same to him and not to answer it; that he had never seen the letters, but had handed them over to Wright; that in the case of the second letter he had taken out the money order and cashed it without reading the letter; and that he had addressed the box of pills at the request of Wright, without knowing the purpose for which they were sent. The originals of the decoy letters were not produced upon the trial, but carbon copies were introduced in evidence in their stead. In order to lay a foundation for these, the government showed that a subpoena duces tecum had been served upon the corporation to produce before the grand jury all correspondence from persons asking for medicine, received at its office from January 1, 1913, until the day of the subpoena, on January 13, 1914, and that in response to such subpoena the defendant had appeared at the office of the district attorney and turned over some boxes of letters. The defendant's testimony upon this matter was as follows: "I produced all the letters that I had at that time. I brought them down to you" (the district attorney) "and gave them to you. I think you were at the grand jury room, which is upstairs." In an interview with a post office inspector the defendant denied ever having seen the originals of the carbon copies which were admitted in evidence.

The defendant's points are, first, that the second count was void for lack of reasonable certainty; second, that there was not sufficient evidence that the defendant had caused the letter to be sent; and, third, that the secondary evidence was improperly admitted.

Hyacinthe Ringrose, of New York City, for plaintiff in error.

Francis G. Caffey, U. S. Atty., of New York City (Julian Hartridge, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1, 2] The crime laid in the second count was in mailing a

letter telling where, how, and from whom, and by what means, contra-conceptives might be obtained. Criminal Code, § 211. The letter answering the first decoy was set forth ipsissimis verbis; so also was the signature at the end of the circular; but the circular itself was not. The circular stated that, if Tansy Pills were not efficacious, binoxide of manganese would serve, which the corporation would sell at $3.10. It was objected at the trial that "the indictment and its two counts fail to set forth with legal sufficiency and reasonable certainty any crime." The indictment surely set forth the crime with reasonable certainty; it advised the defendant of the place and time of mailing the letter; it set forth the letter in extenso and identified the circular beyond doubt. All the requirements of justice were answered; he knew what was the charge, and any judgment on the indictment would have been a good bar under the plea of autrefois acquit. Had he wished a copy of the circular, he might have applied for a bill of particulars; but the substance of the circular appears with sufficient clearness. The only objection was that the indictment was not legally sufficient, which raised no specific question, and did not advise the court of the particulars of the supposed insufficiency. We can see nothing in the indictment which could be challenged, except the failure to extend the circular upon the indictment itself. We do not find it necessary to pass upon that question, because, if that was in fact the basis of the objection, it should have been stated more definitely. No one from the objection could have known that the defendant complained of this omission; indeed, the precise point was not even taken in this court. We think that the objection was not sufficient to raise this question and that, as to the question it did raise, it was not well taken.

[3] There was ample ground to connect the defendant with Wright's act. He was in charge of the business; he opened the box in which the letters came and handed them over to Wright; he took the money order out of the second letter and cashed it, and wrote with his own hand the address to the pill box; and he swore that he had given Wright instructions not to answer any letters similar to the decoys. It was extremely unlikely that Wright, who had no motive to disobey such instructions, should have disregarded them, without bringing the decoy letters to him. It was most unlikely that the defendant should have cashed the money order, or addressed the pills, if he had not read the second letter, or, if he had read the second letter, that he had not authorized Wright to answer the first, on which the indictment was based. The jury was clearly entitled to infer from the character of the business and the nature of the circulars that it was a part of his plan to respond to requests of the sort contained in the decoy.

[4] The admission of secondary evidence of the decoys was justified. It is true that the government served no notice to produce, and, if there was reason to suppose that the letters were still in the possession of the defendant, this might be a valid objection to the admission of secondary evidence; but we have the defendant's own testimony that he had produced all the letters which corresponded

.to the subpœna in January, 1914, and the subpœna covered the decoys. It makes no difference whether this subpœna was served in the preparation of an earlier indictment or not. Prima facie, the government was in possession of all the original letters which the defendant had. Furthermore, the defendant had told Noile (the post office inspector) before the trial that he had never seen the originals, and it must have been idle to give a notice to produce that which he had disclaimed ever receiving. The proper foundation for secondary evidence was therefore present. Briggs v. Hervey, 130 Mass. 186.

None of the exceptions seems to us valid, and the judgment is affirmed.