# LINDER *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 183.   Submitted March 9, 1925.—Decided April 13, 1925.

1. Any provision of an act of Congress ostensibly enacted under power granted by the Constitution, not naturally and reasonably adapted to the effective exercise of such power but solely to the achievement of something plainly within the power reserved to the States, is invalid and can not be enforced.   P. 17.
2. Direct control of medical practice in the States is obviously beyond the power of Congress.   P. 18.
3. Incidental regulation of such practice by Congress through a taxing act, like the Narcotic Law, can not extend to matters plainly inappropriate and unnecessary to reasonable enforcement of a revenue measure.   P. 18.

4. An act of Congress must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score. P. 17.

5. Section 2 of the Narcotic Law, declares it unlawful for any person to sell, give away etc., any of the drugs mentioned in the act except in pursuance of an order of the person to whom the article is sold, etc., written on an official blank, but does not apply "to the dispensing or distribution of the aforesaid drugs to a patient by a physician . . . . registered under this Act in the course of his professional practice only." *Held* inapplicable to a case where a physician, acting *bona fide* and according to fair medical standards, gives an addict moderate amounts of the drugs for self-administration in order to relieve conditions incident to addiction. P. 16.

6. What constitutes *bona fide* medical practice, consistent with the statute, depends upon the facts and circumstances of the case. P. 18.

290 Fed. 173, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals affirming a conviction under the Narcotic Law.

*Mr. George Turner,* for petitioner.

Sub-section (a) of § 2 excepts "the dispensing or distribution of any of the aforesaid drugs to a patient by a physician, dentist, or veterinary surgeon registered under the Act in the course of his professional practice only." The lower courts have engrafted on this exception without any sufficient reason the further requirement that the dispensing or distribution must not only have been in the course of the professional practice of the physician, but that the drugs must have been dispensed or distributed in good faith as medicine, and not to satisfy the cravings of an addict. Other cases holding the same doctrine are *Manning* v. *United States,* 287 Fed. 800; *Melanson* v. *United States,* 356 Fed. 783; *Thompson* v. *United States,* 258 Fed. 196. The term "addict" is not used in the entire Narcotic Act, and the only mention of "good faith" is found in § 8, where, after making it unlawful for any person not registered to have in pos-

session or under his control any of the drugs, a number of exceptions are made, among which is one in favor of those having possession of drugs which may "have been prescribed in good faith by a physician, dentist or veterinary surgeon registered under this Act." Apart from the difficulty of applying provisions relating to one offense to another separate and distinct offense, there are two other very good reasons why the good faith provision in the above exception can have no reference to or influence in construing the exception in favor of registered physicians provided for by sub-section (a) of § 2. The first is the decision of this court in *United States* v. *Jin Fuey Moy,* 241 U. S. 394, in which it was determined that the provision of § 8 against having drugs in possession must be construed as leveled at only those required to register and entitled to register and to procure order blanks; and consequently the good faith provision can have no reference to the dispensing and distribution of drugs to people in general, because they are not entitled to register or to procure order blanks.

Second, an exception to the having drugs in possession cannot be imported into the exception in favor of registered physicians dispensing or distributing the drugs. The two things are entirely different in the considerations which govern them and in the gravity of the act as tending to impair the revenue features of the law. A person entitled to register, but not registered, having the drugs in possession, may very well be considered as presumptively engaged in their clandestine distribution, and therefore to be protected in their possession only by a good faith prescription, and the good faith of the prescription as to him be matter of proper concern. A registered physician, on the other hand, dispensing drugs to patients and keeping the record required, is above board at least, whatever the motive for dispensing the drugs, and no harm can accrue to the administration of the law by

his act, or if harm come, it is infinitesimal, and not worthy of consideration under the maxim *de minimus non curat lex.*

If the exception found in § 2 stands alone, and is not influenced by anything except the general purpose of the law, what dispensing or distribution of drugs to patients may be reasonably considered as " in the course of his professional practice only?" That question, we submit, cannot be answered by the application of any hard and fast rule.

It is the business of the physician to alleviate the pain and suffering of patients as well as to effectuate their cure. If we are to believe the literature on the subject, the suffering of an addict caused by deprivation of his customary drug is as intense as any suffering caused by disease. It is perhaps more so in the insistent demand for relief. Why should not the physician in the course of his ordinary practice take cognizance of that fact and administer temporary relief? It is, we submit, a strained construction of the law to hold that the language in question was intended to prohibit such an act, especially in view of the fact that the entire frame-work of the law shows that it was intended, not to regulate health and morals, but to make regulations with respect to the drug traffic which would keep it above board for the benefit of States and municipalities which do have authority and duty in that direction.

The indictment states no offense even under the construction of the Narcotic Act prevailing in the lower courts. There is nothing in it to negative that the drugs here were dispensed in good faith in the ordinary course of professional practice. It is a well-known fact that one of the means of treating addiction to morphine, or any of the habit-forming drugs, is the administration of diminishing quantities of the drug until the addict is finally weaned away from the habit. In *United States* v.

*Behrman, supra,* it was only the extraordinary quantity of the drug dispensed that enabled the court to find in the acts charged in the indictment an infraction of the law.

If the mere catering to a diseased appetite in the matter of narcotic drugs, even where such catering has no tendency to impair the revenue features of the Narcotic Act, or so slight a tendency as to be negligible, be held to be within the prohibition of that Act, then the said Act to that extent is clearly unconstitutional.

*The Solicitor General, Assistant Attorney General Donovan,* and *Mr. Harry S. Ridgely,* Attorney in the Department of Justice, for the United States.

The writ of certiorari should be dismissed on the ground that it was improvidently granted. The sole question now presented is whether the indictment states an offense which Congress had the constitutional power to create. Neither in the trial court nor in the Circuit Court of Appeals did petitioner in anywise assail the validity of the indictment. It was his duty to have raised the alleged constitutional issue in the trial court, and in the event of an adverse ruling, availed of the statutory right to bring the case here for review on writ of error under § 238 of the Judicial Code. *Ex parte Riddle,* 255 U. S. 450, 451; *idem* 262 U. S. 333, 335; *Goto v. Lane,* 265 U. S. 393, 401; *Pickett v. United States,* 216 U. S. 456, 462; *Magnum v. Coty,* 262 U. S. 159, 163; *Lutcher & Moore Lumber Co. v. Knight,* 217 U. S. 257, 267–268; *Sou. Power Co. v. Pub. Ser. Co.* 263 U. S. 508, 509; *Grant Bros. v. United States,* 232 U. S. 647, 661.

Petitioner contends in substance that if the indictment and the statute upon which it is founded be construed as charging the administration of drugs merely to gratify the appetite of an addict, such an offense is beyond the power of Congress to create. This is precisely what the

indictment and the statute cover, and what this Court intended to uphold in *United States* v. *Behrman,* 258 U. S. 280, 287, 288. The indictment is framed in the same language as the indictment in the *Behrman Case,* except for the amount of the drug alleged to have been sold or distributed otherwise than in the course of professional practice. No distinction, however, can be made on the ground merely of the difference between amounts of drugs. In the *Behrman Case,* this Court had before it only the strict allegations of the indictment, and for that purpose the amount of the drug becomes immaterial in determining whether the indictment actually and sufficiently charges it to have been unlawfully sold or distributed.

Moreover, the case on the record shows a plain purpose on the part of petitioner not to treat the addict in a purely professional way but merely for a money consideration, to make it possible for the addict to obtain the drug solely for the gratification of his addiction. *Hobart* v. *United States,* 299 Fed. 784; *Simmons* v. *United States,* 300 Fed. 321.

The indictment is incapable of the construction of charging that the drug was given in the professional treatment of addiction.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

The court below affirmed the conviction of petitioner by the District Court, Eastern District of Washington, under the following count of an indictment returned therein June 26, 1922. As to all other counts the jury found him not guilty.

" Count II. And the Grand Jurors aforesaid upon their oaths do further present: That Charles O. Linder, whose other or true name is to the Grand Jurors unknown, hereinafter in this indictment called the defendant, late of

the County of Spokane, State of Washington, heretofore, to-wit; on or about the first day of April, 1922, at Spokane, in the Northern Division of the Eastern District of Washington, and within the jurisdiction of this Court, did then and there violate the Act of December 17, 1914, entitled 'An Act to provide for the registration of, with Collectors of Internal Revenue, and to impose a special tax upon all persons who produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away opium or coca leaves, their salts, derivatives, or preparations, and for other purposes,' as amended February 24, 1919, in that he did then and there knowingly, wilfully and unlawfully sell, barter and give to Ida Casey a compound, manufacture and derivative of opium, to-wit: one (1) tablet of morphine and a compound, manufacture and derivative of coca leaves, to-wit: three (3) tablets of cocaine, not in pursuance of any written order of Ida Casey on a form issued for that purpose by the Commissioner of Internal Revenue of the United States; that the defendant was a duly licensed physician and registered under the Act; that Ida Casey was a person addicted to the habitual use of morphine and cocaine and known by the defendant to be so addicted; that Ida Casey did not require the administration of either morphine or cocaine by reason of any disease other than such addiction; that the defendant did not dispense any of the drugs for the purpose of treating any disease or condition other than such addiction; that none of the drugs so dispensed by the defendant was administered to or intended by the defendant to be administered to Ida Casey by the defendant or any nurse, or person acting under the direction of the defendant; nor were any of the drugs consumed or intended to be consumed by Ida Casey in the presence of the defendant, but that all of the drugs were put in the possession or control of Ida Casey with the intention on the part of the defendant that Ida Casey

would use the same by self-administration in divided doses over a period of time, the amount of each of said drugs dispensed being more than sufficient or necessary to satisfy the cravings of Ida Casey therefor if consumed by her all at one time; that Ida Casey was not in any way restrained or prevented from disposing of the drugs in any manner she saw fit and that the drugs so dispensed by the defendant were in the form in which said drugs are usually consumed by persons addicted to the habitual use thereof to satisfy their craving therefor and were adapted for consumption. Contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States."

The Harrison Narcotic Law, approved Dec. 17, 1914, c. 1, 38 Stat. 785—twelve sections—is entitled: "An Act to provide for the registration of, with collectors of internal revenue, and to impose a special tax upon all persons who produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away opium or coca leaves, their salts, derivatives, or preparations, and for other purposes."

Sec. 1 provides—" That on and after the first day of March, nineteen hundred and fifteen, every person [with exceptions not here important] who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away opium or coca leaves or any compound, manufacture, salt, derivative, or preparation thereof, shall register with the Collector of Internal Revenue," and shall pay a special annual tax of one dollar. Also, " It shall be unlawful for any person required to register under the terms of this Act to produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away any of the aforesaid drugs without having registered and paid the special tax provided for in this section. . . . The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury,

shall make all needful rules and regulations for carrying the provisions of this Act into effect."

Sec. 2 provides—"That it shall be unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue." [The giver is required to retain a duplicate and the acceptor to keep the original order for two years, subject to inspection.]   "Nothing contained in this section shall apply—

"(a) To the dispensing or distribution of any of the aforesaid drugs to a patient by a physician, dentist, or veterinary surgeon registered under this Act in the course of his professional practice only: Provided, That such physician, dentist, or veterinary surgeon shall keep a record of all such drugs dispensed or distributed, showing the amount dispensed or distributed, the date, and the name and address of the patient to whom such drugs are dispensed or distributed, except such as may be dispensed or distributed to a patient upon whom such physician, dentist, or veterinary surgeon shall personally attend; and such record shall be kept for a period of two years from the date of dispensing or distributing such drugs, subject to inspection, as provided in this Act.

"(b) . . (c) : . (d) . .

" The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall cause suitable forms to be prepared for the purposes above mentioned. . . . It shall be unlawful for any person to obtain by means of said order forms any of the aforesaid drugs for any purpose other than the use, sale, or distribution thereof by him in the conduct of a lawful business in said drugs or in the legitimate practice of his profession. . . ."

Sec. 8. " That it shall be unlawful for any person not registered under .the provisions of this Act, and who has not paid the special tax provided for by this Act, to have in his possession or under his control any of the aforesaid drugs; and such possession or control shall be presumptive evidence of a violation of this section, and also of a violation of the provisions of Section One of this Act: *Provided,* That this section shall not apply to any employee of a registered person, or to a nurse under the supervision of a physician, dentist, or veterinary surgeon registered under this Act, having such possession or control by virtue of his employment or occupation and not on his own account; or to the possession of any of the aforesaid drugs which has or have been prescribed in good faith by a physician, dentist, or veterinary surgeon registered under this Act; or to any United States, State, county, municipal, District, Territorial, or insular officer or official who has possession of any said drugs, by reason of his official duties, or to a warehouseman holding possession for a person registered and who has paid the taxes under this Act; or to common carriers engaged in transporting such drugs: *Provided further,* That it shall not be necessary to negative any of the aforesaid exemptions in any complaint, information, indictment, or other writ or proceeding laid or brought under this Act; and the burden of proof of any such exemption shall be upon the defendant."

Sec. 9. " That any person who violates or fails to comply with any of the requirements of this Act shall, on conviction, be fined not more than $2,000 or be imprisoned not more than five years, or both, in the discretion of the court."

Section 1 was amended by the Act of February 24, 1919, c. 18, 40 Stat. 1057, 1130. This increased the special annual tax to twenty-four dollars on importers, manufacturers, producers and compounders, twelve dollars on wholesale dealers, six dollars on retail dealers, and three

dollars on "physicians, dentists, veterinary surgeons and other. practitioners lawfully entitled to distribute, dispense, give away, or administer any of the aforesaid drugs to patients upon whom they in the course of their professional practice are in attendance." It also added a provision requiring that stamps—one cent for each ounce—should be affixed to every package of opium, coca leaves, any compound, salt, derivative or preparation thereof, produced in or imported into the United States and sold or removed for consumption or sale, and then, the following paragraph—

"It shall be unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs except in .the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession same may be found; and the possession of any original stamped package containing any of the aforesaid drugs by any person who has not registered and paid special taxes as required by this section shall be prima facie evidence of liability to such special tax: *Provided* That the provisions of this paragraph shall not apply . . . to the dispensing, or administration, or giving away of any of the aforesaid drugs to a patient by a registered physician, dentist, veterinary surgeon, or other practitioner in the course of his professional practice, and where said drugs are dispensed or administered to the patient for legitimate medical purposes, and the record kept as required by this Act of the drugs so dispensed, administered, distributed, or given away."

Manifestly, the purpose of the indictment was to accuse petitioner of violating § 2 of the Narcotic Law, and the trial court so declared. Shortly given the alleged facts follow: Petitioner, a duly licensed and registered physician, without an official written order therefor, know-

ingly, wilfully and unlawfully did sell, barter and give to Ida Casey one tablet of morphine and three tablets of cocaine; he knew she was addicted to habitual use of these drugs and did not require administration of either because of any disease other than such addiction, and he did not dispense them for the treatment of any other disease or condition; they were not administered by him or by any nurse or other person acting under his direction, nor were they consumed or intended for consumption in his presence; the amount was more than sufficient to satisfy the recipient's cravings if wholly consumed at one time; petitioner put the drugs into her possession expecting that she would administer them to herself in divided doses over a period of time; they were in the form in which addicts usually consume them to satisfy their cravings; the recipient was in no way prevented or restrained from disposing of them.

Petitioner maintains that the facts stated are not sufficient to constitute an offense. The United States submit that, considering *United States* v. *Behrman,* 258 U. S. 280, the sufficiency of the indictment is clear.

The trial court charged—

"If you are satisfied beyond a reasonable doubt that defendant knew that this woman was addicted to the use of narcotics, and if he dispensed these drugs to her for the purpose of catering to her appetite or satisfying her cravings for the drug, he is guilty under the law. If, on the other hand, you believe from the testimony that the defendant believed in good faith this woman was suffering from cancer or ulcer of the stomach, and administered the drug for the purpose of relieving her pain, or if you entertain a reasonable doubt upon that question, you must give the defendant the benefit of the doubt and find him not guilty."

In effect, the indictment alleges that the accused, a duly registered physician, violated the statute by giving

to a known addict four tablets containing morphine and cocaine with the expectation that she would administer them to herself in divided doses, while unrestrained and beyond his presence or control, for the sole purpose of relieving conditions incident to addiction and keeping herself comfortable. It does not question the doctor's good faith nor the wisdom or propriety of his action according to medical standards. It does not allege that he dispensed the drugs otherwise than to a patient in the course of his professional practice or for other than medical purposes. The facts disclosed indicate no conscious design to violate the law, no cause to suspect that the recipient intended to sell or otherwise dispose of the drugs, and no real probability that she would not consume them.

The declared object of the Narcotic Law is to provide revenue, and this court has held that whatever additional moral end it may have in view must "be reached only through a revenue measure and within the limits of a revenue measure." *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 402. Congress cannot, under the pretext of executing delegated power, pass laws for the accomplishment of objects not entrusted to the Federal Government. And we accept as established doctrine that any provision of an act of Congress ostensibly enacted under power granted by the Constitution, not naturally and reasonably adapted to the effective exercise of such power but solely to the achievement of something plainly within power reserved to the States, is invalid and cannot be enforced. *McCulloch* v. *Maryland,* 4 Wheat. 316, 423; *License Tax Cases,* 5 Wall. 462; *United States* v. *DeWitt,* 9 Wall. 41; *Keller* v. *United States,* 213 U. S. 138; *Hammer* v. *Dagenhart,* 247 U. S. 251; *Child Labor Tax Case,* 259 U. S. 20. In the light of these principles and not forgetting the familiar rule, that "a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is

unconstitutional but also grave doubts upon that score," the provisions of this statute must be interpreted and applied.

Obviously, direct control of medical practice in the States is beyond the power of the Federal Government. Incidental regulation of such practice by Congress through a taxing act cannot extend to matters plainly inappropriate and unnecessary to reasonable enforcement of a revenue measure. The enactment under consideration levies a tax, upheld by this court, upon every person who imports, manufactures, produces, compounds, sells, deals in, dispenses or gives away opium or coca leaves or derivatives therefrom, and may regulate medical practice in the States only so far as reasonably appropriate for or merely incidental to its enforcement. It says nothing of "addicts" and does not undertake to prescribe methods for their medical treatment. They are diseased and proper subjects for such treatment, and we cannot possibly conclude that a physician acted improperly or unwisely or for other than medical purposes solely because he has dispensed to one of them, in the ordinary course and in good faith, four small tablets of morphine or cocaine for relief of conditions incident to addiction. What constitutes *bona fide* medical practice must be determined upon consideration of evidence and attending circumstances. Mere pretense of such practice, of course, cannot legalize forbidden sales, or otherwise nullify valid provisions of the statute, or defeat such regulations as may be fairly appropriate to its enforcement within the proper limitations of a revenue measure.

*United States* v. *Jin Fuey Moy, supra,* points out that the Narcotic Law can be upheld only as a revenue measure. It must be interpreted and applied accordingly. Further, grave constitutional doubts concerning § 8 cannot be avoided unless limited to persons who are required to register by § 1. Mere possession of the drug creates no presumption of guilt as against any other person.

In *United States* v. *Doremus,* 249 U. S. 86, 93, 95, a registered physician was accused of unlawfully selling, giving away and distributing five hundred one-sixth grain tablets of heroin without official written order. Another count charged selling, dispensing and distributing five hundred such tablets not in the course of regular professional practice. The trial court held § 2 invalid because it invaded the police power of the State. This court declared: "Of course Congress may not in the exercise of federal power exert authority wholly reserved to the States. . . . If the legislation enacted has some reasonable relation to the exercise of the taxing authority conferred by the Constitution, it cannot be invalidated because of the supposed motives which induced it. . . . We cannot agree with the contention that the provisions of § 2, controlling the disposition of these drugs in the ways described, can have nothing to do with facilitating the collection of the revenue, as we should be obliged to do if we were to declare this Act beyond the power of Congress acting under its constitutional authority to impose excise taxes." The sharp division of the court in this cause and the opinion in *Jin Fuey Moy's Case* clearly indicated that the statute must be strictly construed and not extended beyond the proper limits of a revenue measure.

*Webb* v. *United States,* 249 U. S. 96, 99, came here on certified questions. Two were answered upon authority of *Doremus' Case.* The third inquired whether a regular physician's order for morphine issued to an addict, not in the course of professional treatment with design to cure the habit, but in order to provide enough of the drug to keep him comfortable by maintaining his customary use, is a "physician's prescription." The answer was that "to call such an order for the use of morphine a physician's prescription would be so plain a perversion of meaning that no discussion of the subject is required." The lower

court had sought instruction in order that it might decide the particular cause. The question specified no definite quantity of drugs, nor the time intended for their use. The narrated facts show, plainly enough, that physician and druggist conspired to sell large quantities of morphine to addicts under the guise of issuing and filling orders. The so-called prescriptions were issued without consideration of individual cases and for the quantities of the drugs which applicants desired for the continuation of customary use. The answer thus given must not be construed as forbidding every prescription for drugs, irrespective of quantity, when designed temporarily to alleviate an addict's pains, although it may have been issued in good faith and without design to defeat the revenues. This limitation of the reply is confirmed by *Behrman's Case,* 258 U. S. 280, (*infra*) decided three years later, which suggests at least that the accused doctor might have lawfully dispensed some doses.

In *Jin Fuey Moy* v. *United States,* 254 U. S. 189, 194, doctor and druggist conspired to sell opiates. The prescriptions were not issued in the course of professional practice. The doctor became party to prohibited sales. "Manifestly the phrases 'to a 'patient' and ' in the course of his professional practice only'' are intended to confine the immunity of a registered physician, in dispensing the narcotic drugs mentioned in the Act, strictly within the appropriate bounds of a physician's professional practice, and not to extend it to include a sale to a dealer or a distribution intended to cater to the appetite or satisfy the craving of one addicted to the use of the drug. A 'prescription' issued for either of the latter purposes protects neither the physician who issues it nor the dealer who knowingly accepts and fills it."

The quoted language must be confined to circumstances like those presented by the cause. In reality, the doctor became party to sales of drugs. He received a

fixed sum per dram under guise of issuing prescriptions. The quoted words are repeated in *Behrman's Case,* which recognizes the possible propriety of prescribing small quantities.

*United States v. Balint,* 258 U. S. 250, 253, 254, holds— " It is very evident from a reading of it [§ 2] that the emphasis of the section is in securing a close supervision of the business of dealing in these dangerous drugs by the taxing officers of the Government and that it merely uses a criminal penalty to secure recorded evidence of the disposition of such drugs as a means of taxing and restraining the traffic."

*United States v. Behrman,* 258 U. S. 280, 287, came up under the Criminal Appeals Act. The indictment charged that Behrman, a registered physician, did unlawfully sell, barter and give to one King, an " addict," one hundred and fifty grains of heroin, three hundred and sixty grains of morphine and two hundred and ten grains of cocaine, by issuing three prescriptions. Further, that the drugs were not intended or required for treatment of any disease or condition other than such addiction, but for self-administration over a period of several days. The question was, " Do the acts charged in this indictment constitute an offense within the meaning of the statute? " And replying, this court said—

" The District Judge who heard this case was of the opinion that prescriptions in the regular course of practice did not include the indiscriminate doling out of narcotics in such quantity to addicts as charged in the indictment. . . . In our opinion the District Judge who heard the case was right in his conclusion and should have overruled the demurrer. Former decisions of this court have held that the purpose of the exception is to confine the distribution of these drugs to the regular and lawful course of professional practice, and that not everything called a prescription is necessarily such. [*Webb* v.

*United States* and *Jin Fuey Moy* v. *United States, supra,*
are cited.] . . . It may be admitted that to prescribe
a single dose, or even a number of doses, may not bring
a physician within the penalties of the Act; but what is
here charged is that the defendant physician by means of
prescriptions has enabled one, known by him to be an
addict, to obtain from a pharmacist the enormous num-
ber of doses contained in 150 grains of heroin, 360 grains
of morphine, and 210 grains of cocaine "—three thousand
ordinary doses!

This opinion related to definitely alleged facts and
must be so understood. The enormous quantity of drugs
ordered, considered in connection with the recipient's
character, without explanation, seemed enough to show
prohibited sales and to exclude the idea of *bona fide* pro-
fessional action in the ordinary course. The opinion can-
not be accepted as authority for holding that a physician,
who acts *bona fide* and according to fair medical stand-
ards, may never give an addict moderate amounts of
drugs for self-administration in order to relieve condi-
tions incident to addiction. Enforcement of the tax de-
mands no such drastic rule, and if the Act had such scope
it would certainly encounter grave constitutional diffi-
culties.

The Narcotic Law is essentially a revenue measure and
its provisions must be reasonably applied with the pri-
mary view of enforcing the special tax. We find no facts
alleged in the indictment sufficient to show that peti-
tioner had done anything falling within definite inhibi-
tions or sufficient materially to imperil orderly collection
of revenue from sales. Federal power is delegated, and
its prescribed limits must not be transcended even though
the end seem desirable. The unfortunate condition of
the recipient certainly created no reasonable probability
that she would sell or otherwise dispose of the few tablets
entrusted to her; and we cannot say that by so dispens-

ing them the doctor necessarily transcended the limits of that·professional conduct with which Congress never intended to interfere.

The judgment below must-be reversed. The cause will be remanded·to the District Court for further proceedings in harmony with this opinion.

*Reversed.*