## HELLER v. UNITED STATES.
### No. 4413.

Circuit Court of Appeals, Fourth Circuit.

June 12, 1939.

James H. Price and Benj. A. Bolt, both of Greenville, S. C., for appellant.

Thomas A. Wofford, Asst. U. S. Atty., of Greenville, S. C. (Oscar H. Doyle, U. S. Atty., and E. P. Riley, Asst. U. S. Atty., both of Greenville, S. C., on the brief), for the United States.

Before PARKER and SOPER, Circuit Judges, and HARRY E. WATKINS, District Judge.

PARKER, Circuit Judge.

The appellant, Dr. John Ross Heller, and one William C. Kuhn, manager and prescription clerk of a retail drug store, were indicted and convicted in the court below on a charge of conspiracy to violate Section 2 of the Harrison Narcotic Act. The plan of the conspiracy, as charged, was that Dr. Heller would write prescriptions for narcotic drugs, not for the treatment of bona fide patients, but to supply the cravings of persons who were drug addicts, and that Kuhn would fill such prescriptions. Kuhn was admitted to probation, but Dr. Heller was sentenced to a year in prison and has appealed to this court. He contends that there was no sufficient evidence to warrant his conviction of conspiracy and that the trial court committed a number of errors in the admission of testimony and in the charge. A careful review of the record convinces us, however, that none of these contentions is well founded.

The evidence shows that the defendant Kuhn was operating the Branwood Pharmacy in Greenville, South Carolina, and that Dr. Heller was practicing medicine in that city. Without reviewing it in detail, we think there can be no doubt that it furnishes sufficient basis for a finding by the jury that Dr. Heller was giving prescriptions to drug addicts, not in the treatment of disease in the bona fide practice of his profession, but to enable them to secure the drug to gratify the cravings of their appetites; that Kuhn filled the prescriptions with knowledge of their fraudulent character; and that this was done pursuant to an understanding existing between him and Dr. Heller. Especially significant, as bearing upon this understanding, is evidence to the effect that certain prescriptions given by Heller were left undated by him so that they might be dated by Kuhn in such way as to present a record that would not excite the suspicion of the narcotic inspectors. That the acts contem-

plated by the conspiracy thus shown constituted a violation of section 2 of the Harrison Act, 26 U.S.C.A. § 1044, does not admit of question. Linder v. United States, 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819, 39 A.L.R. 229; United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619; Jin Fuey Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214; Webb v. United States, 249 U.S. 96, 39 S.Ct. 217, 63 L.Ed. 497. As said by the Supreme Court in the Jin Fuey Moy case [254 U.S. 189, 41 S.Ct. 100]: "Manifestly the phrases 'to a patient' and 'in the course of his professional practice only' are intended to confine the immunity of a registered physician, in dispensing the narcotic drugs mentioned in the act, strictly within the appropriate bounds of a physician's professional practice, and not to extend it to include a sale to a dealer or a distribution intended to cater to the appetite or satisfy the craving of one addicted to the use of the drug. A 'prescription' issued for either of the latter purposes protects neither the physician who issues it nor the dealer who knowingly accepts and fills it."

During the progress of the trial the government offered in evidence carbon copy of a letter written by a government agent to the defendants Heller and Kuhn asking them to send him narcotics by the informer George Roberts. Roberts testified that he delivered the letter to them and that Dr. Heller thereupon wrote a prescription which was filled by Kuhn. Objection to the copy of the letter was made on the ground that it was not the best evidence and that no notice had been served to produce the original. The objection was overruled and the copy admitted. Defendants later denied receiving any such letter.

■ In the light of the denial of defendants that they had received the letter, any notice to produce would have been unavailing, and would have been unnecessary to make the copy admissible under the best evidence rule. Dunbar v. United States, 156 U.S. 185, 195, 15 S.Ct. 325, 39 L.Ed. 390; Pilson v. United States, 2 Cir., 249 F. 328, 331; Wigmore on Evidence, 2d ed., vol. 2, p. 768; 22 C.J. 1062. But as the case before the court was a criminal prosecution, notice to produce was not required in any event and proof of such notice would not have been proper. In such case the rule is that where a writing is traced to the possession of the defendants, as is the case here, the government, without more ado, may offer secondary evidence of its contents. The point was thoroughly covered by this court in Lisansky v. United States, 4 Cir., 31 F.2d 846, 850, 67 A.L.R. 67, where we said:

"So far as the best evidence rule is concerned, the government complied with this rule, in that it produced the best proof which could be produced under the circumstances of the case. The books were shown to be in possession of the defendants; and, because of the provisions of the Fourth and Fifth Amendments, the court was without power to require their production at the trial. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. And it was not permissible for the government even to lay the foundation for the introduction of copies of the books, as in civil cases, by making demand for their production in open court, or by introducing in evidence notice of such demand. McKnight v. U. S., 6 Cir., 115 F. 972, 981. But evidence as to the contents of books and papers is not lost to the government because the defendant has them in his possession and their production cannot be ordered or the usual basis laid for the introduction of secondary evidence. In such cases, the rule is that, when they are traced to his possession, the government, without more ado, may offer secondary evidence of their contents. United States v. Reyburn, 6 Pet. 352, 368, 8 L.Ed. 424; McKnight v. United States, supra; United States v. Doebler, 25 Fed.Cas. p. 883, No. 14,977.

"The rule applicable in such cases was well stated by Mr. Justice Day, then a Circuit Judge of the Sixth Circuit, in the McKnight Case, as follows: 'The authorities seem very clear that in such cases, where a criminating document directly bearing upon the issue to be proven is in the possession of the accused, the prosecution may be permitted to show the contents thereof, without notice to the defendant to produce it. As it would be beyond the power of the court to require the accused to criminate himself by the production of the paper as evidence against himself, secondary evidence is admissible to show its contents. As the introduction of secondary evidence of a writing in such instances is founded upon proof showing the original to be in the possession of the defendant, it will ordinarily be in his power to produce it, if he regards it for his interest to do so.' "

Another exception relates to the testimony of an expert, Dr. Edwards. A gov-

ernment witness, a narcotic addict named Pike, had testified that, while living in Winston-Salem, N. C., he went on week ends to Greenville, S. C., approximately 180 miles distant, and secured prescriptions for narcotics from Dr. Heller which he had filled by Kuhn. He claimed to be suffering from myocarditis and amoebic dysentery, and 43 prescriptions signed by Dr. Heller were introduced in evidence showing that they were issued for "incurable chronic angina and chronic amoebic dysentery". Dr. Edwards testified without objection that morphine has a place in the treatment of myocarditis, but that in his opinion a patient whose condition justifies the use of morphine should be at absolute rest in bed. He was then asked whether in his opinion the use of morphine was justified in the case of a person suffering from myocarditis whose condition was such that he was able to carry on his usual occupation and make a trip of 180 miles and return each week end. There was objection on the ground that the question was not hypothetical but required the doctor to pass upon the testimony of witnesses. This objection, which was manifestly not well grounded, was overruled, and the witness answered in the negative. He then testified without objection that the use of morphine in myocarditis was for the purpose of relaxing the patient and taking as much of the load off the heart as possible. He was then asked whether a dram every six or seven days was more than he considered necessary for that purpose. He answered over objection that "the indication of that much morphine would be a rather rare case."

We do not see that the testimony of this witness with respect to either of the matters objected to went beyond the permissible limits of expert opinion evidence. The question as to whether the use of morphine was justified in the case of a patient who was in such condition that he was able to carry on his regular business and travel 360 miles over week ends, called for the expression of a professional opinion based on scientific knowledge; and it was of course no valid objection that the facts upon which the question was hypothecated had been testified to by witnesses in the cause. The question would not ordinarily have been competent otherwise. Nor is it valid ground of objection that the hypothesis of the question did not cover the fact that the patient was a narcotic addict. So long as the question was based on facts in evidence it was within the discretion of the trial judge to permit it; and if there were facts which were not included in the hypothesis, they could have been brought out by cross examination. 11 R.C.L. 579–581. In no event could the testimony have been prejudicial, in view of the prior testimony of the witness, received without objection, to the effect that a patient whose condition resulting from myocarditis justified the use of morphine should be at rest in bed.

The testimony as to how much morphine was proper in the treatment of such a condition was clearly a matter for expert opinion. Strader v. United States, 10 Cir., 72 F.2d 589, 592; Thompson v. U. S., 8 Cir., 258 F. 196, 199; Melanson v. United States, 5 Cir., 256 F. 783, 786. And, if it was thought that sufficient account had not been taken of the fact that the patient was a narcotic addict, this, as heretofore stated, should have been developed on cross examination. The answer, however, could not have been harmful whether the question was admissible or not; and neither this testimony nor that covered by the prior question could have had the slightest influence on the outcome of the trial. The mere fact that a patient, supposed to be suffering from myocarditis, was making trips of 360 miles each week end to secure a prescription for morphine, spoke so loudly as to the real situation existing that any testimony as to proper dosage for such an ailment would hardly be noticed.

Complaint is made that the judge in charging the jury read extracts from the opinions of the Supreme Court in the Linder and Behrman cases, supra, referring to the facts in those cases. It appears, however, that he carefully cautioned the jury not to consider the facts of the cases as having any bearing upon the case before the court. He read the facts as contained in the opinions of the court and explained that they were to be considered only as illustrating the rule laid down in the opinions. The charge was a clear and able exposition of the law applicable; and the jury could not possibly have been misled by the portion of which appellant complains. Reference is made to certain decisions of the South Carolina Supreme Court relating to the matter; but state practice is not controlling in the federal courts on questions of this character. In the state courts of South Carolina the judge may not comment on the evidence and his charge con-

sists necessarily of the statement of abstract propositions of law. In the federal courts, it is his duty to apply the law to the facts in issue. He should array the evidence for the benefit of the jury and declare and explain the law applicable thereto, not in abstract propositions, but in terms which the jurors can understand. It is no objection to a charge that the rules as thus stated be illustrated either by hypothetical cases or by the facts of actual cases to which they have been applied; for there is no better way than this to explain a rule of law to the mind of the juror. Care should, of course, be taken that the facts used as illustrative are not permitted to confuse the issues; but care was exercised in this case and no confusion could have resulted.

Other exceptions covered by the assignments of error are so manifestly without merit as not to justify discussion.

For the reasons stated the judgment appealed from will be affirmed.

Affirmed.