BIRCH Circuit Judge,
dissenting, in which HILL, Circuit Judge, joins:
As to the majority opinion, I respectfully dissent. I fully concur in Judge Hill’s and Judge Tjoflat’s dissents and add my following thoughts as well.
At its core, this case devolves into a simple, yet nuanced, question: does the Commerce Clause grant the United States Congress the power to proscribe the common law crime of arson by attaching the jurisdictional qualifier “in or affects interstate commerce” to the anti-church-burning statute, 18 U.S.C. § 247? As Judge Hill’s thorough and well-reasoned dissent points out, the majority’s noble effort to uphold the constitutionality of § 247 through statutory construction fails to consider what the statute actually penalizes, namely, a local common law crime against property.[1] While I fully concur with his opinion and analysis, Judge Hill’s arguments can be magnified even further when viewed through the lens of federalism, a concept which retains vitality and importance in our modern constitutional scheme, see United States v. Lopez, 514 U.S. 549, 575, 115 S.Ct. 1624, 1637, 131 L.Ed.2d 626 (1995). Recognizing that § 247 regulates by federal statute an area of criminal law traditionally reserved to the States, I write separately to emphasize that the principles of federalism implicated in this case should have led the majority to find that 18 U.S.C. § 247 represents an incursion into State police powers not sanctioned by the United States Constitution.

*1249
I. Federalism and Its Relation to Commerce Clause Interpretation

It is axiomatic that the “Constitution creates a Federal Government of enumerated powers.” Lopez, 514 U.S. at 552, 115 S.Ct. at 1626. Despite the rise and fall of various constitutional doctrines, this bedrock principle has received enduring, unfailing adherence. See McCulloch v. Maryland, 17 U.S. (4 Wheat) 316, 405, 4 L.Ed. 579 (1819) (noting that it is “universally admitted” that the federal government is “one of enumerated powers”); Hammer v. Dagenhart, 247 U.S. 251, 275, 38 S.Ct. 529, 532, 62 L.Ed. 1101 (1918) (same); United States v. Morrison, 529 U.S. 598, 607, 120 S.Ct. 1740, 1748, 146 L.Ed.2d 658 (2000). In accordance with this construct, “[e]very law enacted by Congress must be based on one or more of its powers enumerated in the Constitution.” Morrison, 529 U.S. at 607, 120 S.Ct. at 1748. Concomitant with this recognition that federal legislative power is limited by the Constitution, however, is the principle that legislative power not granted to Congress was reserved to the States. See U.S. Const, amend. X; United States v. Darby, 312 U.S. 100, 124, 61 S.Ct. 451, 462, 85 L.Ed. 609 (1941) (noting that the Tenth Amendment “states but a truism that all is retained which has not been surrendered”). The Framers thus established a constitutional structure in which “[t]he powers delegated ... to the federal government are few and defined[;][t]hose which are to remain in the State governments are numerous and indefinite.” The Federalist No. 45 (James Madison). Accordingly, the Constitution ensures “a system of dual sovereignty between the States and the Federal Government.” Gregory v. Ashcroft, 501 U.S. 452, 457, 111 S.Ct. 2395, 2399, 115 L.Ed.2d 410 (1991). This complex constitutional dynamic is typically summarized by the single phrase “federalism.”
Realizing that the constitutional design mandated adherence to federalist principles, federalism has informed jurisprudential analysis in a number , of areas. For example, federalism and respect for State sovereignty has led the Supreme Court to caution against granting federal injunctions to enjoin pending State court proceedings. See Younger v. Harris, 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). Likewise, a concern for federalist principles has led federal courts to refrain from reversing a State court decision if that decision rests on adequate State grounds independent of federal questions. See, e.g., Murdock v. City of Memphis, 20 Wall. 590, 87 U.S. 590, 635, 22 L.Ed. 429 (1875). Similarly, respect for the legislative competence of States has dictated that federal courts sitting in diversity apply State rules of decision, see Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), (noting that “the Constitution of the United States ... recognizes and preserves the autonomy and independence of the States”), and State choice of law rules, see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).
It is against this backdrop of federalism that the Commerce Clause is most appropriately interpreted when a federal statute purports to • regulate an area in which State law traditionally occupied the field. The Constitution grants Congress the power to “regulate Commerce with foreign Nations, and among the several States — ” U.S. Const. art. I, § 8. This “express grant of power to regulate commerce among the States has always been understood as limited by its terms.” United States v. Dewitt, 76 U.S. (9 Wall.) 41, 44, 19 L.Ed. 593 (1869); see Lopez, 514 U.S. at 553, 115 S.Ct. at 1627 (citing Gibbons v. Ogden, 22 U.S. (9 Wheat) 1, 6 L.Ed. 23 (1824) for the proposition that the “limitations on the commerce power, are inherent in the very language of the Com- *1250 meree Clause”). Thus, the Constitution relegates Congressional activity to areas of interstate commerce. The Framers chose to limit the exercise of federal power in this manner precisely to preserve a federalist system. See NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37, 57 S.Ct. 615, 624, 81 L.Ed. 893 (1937) (“[T]he scope of this [Commerce Clause] power must be considered in the light of our dual system of government....”). By restricting congressional activity to the regulation of interstate commerce, the Constitution preserves the “ ‘distinction between what is national and what is local’ ” lest a “ ‘completely centralized government’ ” wholly occupy the legislative field. Lopez, 514 U.S. at 557, 115 S.Ct. at 1629 (quoting Jones & Laughlin Steel Corp., 301 U.S. at 37, 57 S.Ct. at 624).
Admittedly, however, some federal regulation in areas traditionally reserved to the States is required. Realizing that certain acts which are wholly intrastate in character may affect interstate commerce, and thereby frustrate Congress’s express power to regulate interstate commerce, the Supreme Court has permitted federal regulation of such activity where it substantially affects interstate commerce in the aggregate. See Wickard v. Filburn, 317 U.S. 111, 124-25, 63 S.Ct. 82, 89, 87 L.Ed. 122 (1942). The Wickard decision, however, has been subsequently declared to be “perhaps the most far reaching example of Commerce Clause authority over intrastate activity.” Lopez, 514 U.S. at 560, 115 S.Ct. at 1630. Moreover, subsequent decisions relying on Wickard have delimited its holding in two important and obvious ways because of federalist concerns. First, federal regulation of intrastate activity must regulate activity that is economic in nature. Morrison, 529 U.S. at 610, 120 S.Ct. at 1750.[2] This limitation recognizes that if the federal government is allowed to encroach upon noneconomic areas of State concern, federal regulation will crowd out state legislation in contravention to the Constitution’s federalist dynamic. See Lopez, 514 U.S. at 595, 115 S.Ct. at 1647 (Thomas, J., concurring) (noting that the power to regulate “intrastate commerce” which substantially affects interstate commerce does not sanction federal regulation of intrastate “activities” unrelated to commerce). Second, federal enactments reaching intrastate commerce must have a sufficient nexus to interstate activity. Id. at 562-63, 115 S.Ct. 1624; see Maryland v. Wirtz, 392 U.S. 183, 196, 88 S.Ct. 2017, 2024, 20 L.Ed.2d 1020 (1968) (“The subject of federal power is still ‘commerce,’ and not all commerce but commerce ... among the several States.”) (citation omitted). The Court relegated Wickard’s reach in this manner because, if the federal government were allowed “to take over the regulation of entire areas of traditional state concern, ... the boundaries between the spheres of federal and state authority would blur .... ” Lopez, 514 U.S. at 577, 115 S.Ct. at 1638 (Kennedy, J., concurring). Accordingly, along the *1251 spectrum of Congress’s commerce power, Wickard, and its progeny, tempered by federalist limitations, represent the farthest federal regulation can reach into intrastate activity. The majority ignores this limitation.

II. The Commerce Power and 18 U.S.C. § 217

Against this background of federalism and the boundaries it establishes for congressional activity in areas typically relegated to State law, the core issues in this case come into focus. As Judge Hill’s dissent notes, 18 U.S.C. § 247 represents a federal statute which purports to proscribe the common law crime of arson when directed at religious real property by a perpetrator who crossed State lines to commit the crime. Viewing the commerce power in a federalist context, it becomes manifest that the power to proscribe church burning in this manner lies beyond Congress’s grasp.
First, this regulation impermissibly intrudes into areas traditionally reserved to the States. “States possess primary authority for defining and enforcing the criminal law.”[3] Brecht v. Abrahamson, 507 U.S. 619, 635, 113 S.Ct. 1710, 1720, 123 L.Ed.2d 353 (1993). That the legislative proscription of common law crimes should be left to the States was apparent to the Framers before the Constitution was ratified. See The FedeRalist, No.17 (Alexander Hamilton) (noting that the “administration of criminal and civil justice” was reserved to the States). This concept was confirmed by the Supreme Court, see Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 428, 5 L.Ed. 257 (1821) (“It is clear, that Congress cannot punish felonies generally.”), and it retains vitality today, see Morrison, 529 U.S. at 618, 120 S.Ct. at 1754 (“[W]e can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.”). In addition to encroaching into State criminal law, § 247 also relates to real property, another area traditionally reserved to the States. See Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 387-88, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926). By purporting to outlaw the act of burning a church, Congress has federalized a common law crime against property. See California v. Minjares, 443 U.S. 916, 927, 100 S.Ct. 9, 15, 61 L.Ed.2d 892 (1979) (Rehnquist, J., dissenting) (noting that “crimes against person and property — the traditional common-law crimes — have largely remained the preserve of the State.”). Truly, church arson is contemptible behavior, and Bal-linger’s conduct merits harsh condemnation. His acts, however, devastated the worship spaces of local church communities; and by destroying local, fixed real property, the affects of his crimes are most closely felt by local citizens. Accordingly, the proper channel for expressing local outrage and exacting justice is the State criminal law[4] enacted by the representa *1252 tives of the affected local citizens.[5] Because “Congress may not in the exercise of federal power exert authority wholly reserved to the States,” Linder v. United States, 268 U.S. 5, 19, 45 S.Ct. 446, 449, 69 L.Ed. 819 (1925) (citation omitted), § 247 is an unconstitutional attempt by Congress to reach beyond its commerce power. See Hammer, 247 U.S. at 273, 38 S.Ct. at 532 (finding unconstitutional a federal statute proscribing the trafficking of goods made with child labor because it infringed on State police power); Keller v. United States, 213 U.S. 138, 148, 29 S.Ct. 470, 473, 53 L.Ed. 737 (1909) (invalidating a federal statute criminalizing the importation of an alien for purposes of prostitution because “there is in the Constitution no grant to Congress of the police power”); see also Jones v. United States, 529 U.S. 848, 858, 120 S.Ct. 1904, 1912, 146 L.Ed.2d 902 (2000) (reading 18 U.S.C. § 844(i) narrowly to avoid the constitutional issue of transforming all arson subject to state regulation into federal felonies).
Second, assuming arguendo that § 247 is in fact placed closer to the realm of permissible federal regulation of intrastate conduct recognized by Wickard and its progeny because it contains the jurisdictional qualifier “in or affects commerce,”[6] its lack of the requisite nexus to things economic shows that § 247 is beyond even the furthest reach of Congress’s commerce power. In Lopez, the Court found that a federal statute regulating firearm possession in schools lacked any nexus to economic activity. See Lopez, 514 U.S. at 551, 115 S.Ct. at 1626. Similarly, only by the employment of several inferential conclusions can one connect the proscription in 18 U.S.C. § 247 to economic activity. See id. at 567, 115 S.Ct. 1624 (refusing to “pile inference upon inference” to sustain a federal statute when its provisions regulated noneconomic activity). Indeed, the majority’s expansive interpretation of Wickard’s sanction of federal regulation of intrastate commerce “risks making a whole catalog of ordinary state crimes a concurrent violation of a single congressional statute .... ” *1253 Bray v. Alexandria Women’s Health Clinic, 506 U.S. 263, 287, 113 S.Ct. 753, 768, 122 L.Ed.2d 34 (1993) (Kennedy, J., concurring). The commerce power has “outer limits,” Lopez, 514 U.S. at 557, 115 S.Ct. at 1628, and § 247, as a regulation of noneco-nomic criminal activity, falls outside of those limits.

III. Conclusion

While the burning of a church, “is offensive to the moral sense, ... that fact must not close the eye to the question whether the power to punish therefor is delegated to Congress or is reserved to the State.” Keller, 213 U.S. at 144, 29 S.Ct. at 471. In construing the Commerce Clause, we are charged with upholding the Constitution, implicit in which is a federalist design. Here, by failing to appreciate the significance of federalism, the majority has misconstrued the limits of the Commerce Clause and allowed a federal statute to regulate intrastate noneconomic conduct in an area of law traditionally protected from federal intrusion. Thus, the majority has burned yet another bridge to our federalist foundations. Because I believe that this incursion into State police powers is not sanctioned by the Constitution, I respectfully dissent.

. As Judge Hill notes, § 247 cannot be construed to penalize interstate travel to accomplish an arson of religious real property because the proscription of such travel was excised by Congress in 1996 when it amended the statute. By deleting the reference to interstate travel and inserting the present language, Congress cast § 247’s reach “over a wider, and more purely intrastate” category of common law crimes by outlawing the act of church-burning itself if accomplished after the arsonist happened to cross State lines. See United States v. Morrison, 529 U.S. 598, 613, 120 S.Ct. 1740, 1752, 146 L.Ed.2d 658 (2000).

. Reading the cases in which federal regulations of intrastate activity have been upheld under the Commerce Clause, this limitation could be refined even further to require that the federal regulation promote the national economy, rather than simply affect it. See United States v. Wrightwood Dairy Co., 315 U.S. 110, 120, 62 S.Ct. 523, 526, 86 L.Ed. 726 (1942) (noting that the Sherman Antitrust Act could be applied to intrastate activity because anti-monopolistic conditions promoted interstate commerce); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 258, 85 S.Ct. 348, 358, 13 L.Ed.2d 258 (1964) (finding regulation of motels was permitted under Commerce Clause because it promoted interstate commerce by encouraging unrestricted interstate travel); Perez v. United States, 402 U.S. 146, 154-55, 91 S.Ct. 1357, 1362-63, 28 L.Ed.2d 686 (1971) (upholding federal criminalization of loan-sharking because such practices hindered legitimate national economic activity).

. Importantly, it should be noted that Congress is not barred from enacting criminal laws pursuant to its express powers. See Lopez, 514 U.S. at 597 n. 6, 115 S.Ct. at 1648 n. 6 (Thomas, J., concurring). Utilizing the Necessary and Proper Clause, see U.S. Const, art. I, § 8, Congress has prohibited movement through interstate channels by criminal sanction. See, e.g., 18 U.S.C. § 1958 (criminalizing travel to commit murder for hire). When Congress criminalizes localized conduct traditionally regulated the States, however, federalism concerns are triggered and federal courts should invalidate the statute if it unduly obliterates the federal-State balance mandated by our constitutional design. See Lopez, 514 U.S. at 552, 115 S.Ct. at 1626.

. State criminal statutes would have outlawed Ballinger's conduct in each of the States in which he committed church arson. See Ind. Code Ann. § 35-43-1-1; Ky.Rev.Stat. Ann. § 513.030; Tenn.Code Ann. § 39-14- *1252 301(b)(2)(A) (specifically proscribing "[a]rson of a place of worship”); O.C.G.A. § 16-7-61.

. In this way, the majority's insistence that the statute constitutionally prevents channels of interstate commerce from being used to accomplish injurious or harmful ends is misplaced. While Ballinger used interstate highways to travel to the States in which he burned churches, his crimes affected fixed real property and local citizens. Accordingly, the channels of interstate commerce were rendered no less conducive to the facilitation of commerce simply because Ballinger used them prior to the commission of his crimes. If Congress’s commerce power were allowed to stretch so far, Congress could proscribe common law murder, an act which also has localized affects and sparks local outrage, if the perpetrator used a highway to arrive at the scene of the crime. As the Supreme Court has noted, Congress lacks the power to proscribe common law murder. See Cohens v. Virginia, 19 U.S. at 426 (stating that Congress has "no general right” to punish common law crimes like "murder committed within any of the States”). Accordingly, by analogy, Congress may not proscribe arson in § 247 under the guise of protecting a channel of interstate commerce when arson has localized affects and in no way impairs the conduct of commercial intercourse.

. As Judge Hill's dissent notes, the majority relies heavily upon this jurisdictional qualifier to uphold the constitutionality of § 247. While the Lopez Court faulted the federal statute in that case for its lack of a jurisdictional limitation, see Lopez, 514 U.S. at 561, 115 S.Ct. at 1631, it did not indicate that the presence of such a limitation would have by itself saved the statute from invalidation. Moreover, the Lopez Court's first and primary objection to the statute was that it was a criminal statute that lacked the requisite nexus to economic activity. See id. at 561, 115 S.Ct. 1624. Accordingly, I attach more weight to what § 247 penalizes than to its inclusion of a jurisdictional qualifier.