[No. 24084. Department One. January 12, 1933.]

WALNUT PARK LUMBER & COAL COMPANY, *Respondent,*
v. EVA L. ROANE, *Appellant.*[1]

*Crass & Hardin* and *Paul Elwell,* for appellant.

*McMullen & Snider* and *Jesse G. Warrington,* for respondent.

MILLARD, J.—Shortly after its incorporation under the laws of Oregon, the Oregon-Washington Livestock

[1]Reported in 17 P. (2d) 896.

Association became insolvent. On September 11, 1931, a judgment was recovered in Oregon against that corporation by the Walnut Park Lumber & Coal Company, another Oregon corporation. The plaintiff brought an action on that judgment against the defendants on their unpaid subscriptions for capital stock of the livestock association. Trial of the cause to the court resulted in judgment against only one of the defendants, Eva L. Roane, who has appealed.

Appellant insisted on the trial of the cause and urges on appeal that, pursuant to an agreement (subsequently ratified by the corporation) with the promoter of the livestock association, she subscribed for three hundred shares of stock for which she made full payment with real property. The facts are as follows:

J. H. Kelly, the promoter and organizer (later its manager and president) of the Oregon-Washington Livestock Association, entered into a written contract with the appellant March 19, 1931. Appellant agreed to purchase three hundred shares of stock, at one hundred dollars a share, of the livestock association, a corporation to be organized by Kelly. The latter was to issue, or transfer individually "or through his corporation," the stock to appellant as payment in full for Clark county real property to be conveyed by appellant to Kelly. That real property, of the recited value of $41,000, was subject to a mortgage of $11,000. On or about the same date, under a three-cornered deal, appellant conveyed the real property above mentioned to T. M. Keller, who, in turn, conveyed certain real property in Lincoln county to Kelly. It was understood that appellant was to receive three hundred shares of the livestock association capital stock. The shares were never delivered to her. The livestock association was incorporated the latter part of April, 1931. The name of appellant, and others, appears on a sheet

364

of paper showing unconditional subscription for shares of stock on April 18, 1931. The indebtedness on which respondent recovered a judgment in Oregon against the association was incurred by the latter subsequent to its incorporation.

Appellant and another witness testified that they were present at two meetings of the board of directors of the livestock association subsequent to the incorporation of the association; that Kelly, the then manager and president of the corporation, informed the board of directors fully as to what he had done.

"He told of all the contracts, property he was dealing in, and they ratified all the things brought up and also voted to put Mr. Kelly under bond to handle what money he was going to get. Q. At that time was anything said relative to the property that Mr. Kelly received through the Roane, Keller, Kelly deal? A. Mr. Kelly told of all of these different properties transferred to him for the company, told the advantages of them. . . . The second meeting, the quorum of the trustees were present, was held at the residence of the secretary, Mrs. Dietz, and the question of Mr. Kelly holding the title to the property, and this property was one in question and discussed and it was conceded that the property belonged to the corporation, but Mr. Kelly had not made a formal deed to the property."

While it fairly appears from the testimony that, at one of the meetings of the directors, an attorney of the corporation submitted written resolutions ratifying the acts and contracts prior to incorporation of the association, and that the board approved those resolutions, it is not clear whether, at either of the two meetings, the secretary kept a record of the minutes of the meetings. The former secretary of the livestock association denied that such resolutions were before the board of directors or that any discussion was had of the contracts of Kelly.

■ Respondent argues that, as the livestock association was an Oregon corporation, "it is our understanding that the laws of the state of Oregon control," etc.; that, as no foundation was laid for the introduction of secondary evidence, parol evidence as to ratification of Kelly's contracts was inadmissible.

Courts do not take judicial notice of the laws of other states. In the absence of pleading and proof of the provisions of the corporation statutes of Oregon, it will be presumed that the Oregon laws are the same as the laws of this state.

■ There was testimony that the reasonable value of the property transferred by appellant for her stock was, at the time of the transfer under her contract with Kelly, in excess of the par value of the stock for which she subscribed but never received. That was some evidence of the value of the property. We do not find aught in our statutes, in view of the approval by the livestock association's directors of the exchange of property, that may be invoked in aid of respondent.

■ The general rule is, as respondent contends, that parol evidence can not be received to prove the contents of the records of a corporation, such records being "the best testimony to the acts evidenced thereby." 10 R. C. L. 154, § 126. However, parol evidence of the corporate acts of the livestock association was admissible under the showing made. From our examination of the evidence before us, we can not say that the corporation's records were perfectly kept. There is testimony from which it is inferable that a complete record of all of the proceedings of the board of directors was not made and preserved, hence parol evidence was admissible in the instant case to show the adoption of the resolutions ratifying the acts of the promoter, the then manager and president of the corporation.

"Questions as to the effect of the omission of a corporation to record its corporate acts frequently arise in determining the admissibility of parol evidence to prove such acts. The records of a corporation are *prima facie* evidence of its organization and subsequent proceedings. When such records exist, they are the best evidence, and the rules of evidence require their production. But all the acts of a corporation need not be established by positive record evidence. Where the records of a corporation are omitted entirely, or where they are so carelessly or imperfectly kept as not to show the adoption of resolutions or other acts of the corporation, parol evidence may be admitted to show that such resolutions were adopted, or that such acts were done, by the governing body, unless the law or the charter expressly and imperatively requires all matters to appear of record, and makes the record the only evidence. Mr. Justice Story, discussing this subject, said:

" 'Here, then, secondary evidence and presumptive proof were admitted in a suit against the corporation to fix its responsibility. A vote of the corporation was presumed from the other acts, though there was no proof of such a vote being on record. If the corporation had shown that no such vote had been on record, would the presumption have been completely repelled? Would the omission of the corporation to record its own doings have prejudiced the rights of the party relying upon the good faith of an actual vote of the corporation? If such admission would not be fatal to the plaintiff in suits against the corporation (as in our opinion it would not be), it establishes the fact that acts of the corporation not recorded may be established by parol proofs, and, of course, by presumptive proofs. In reason and justice, there does not seem any solid ground why a corporation may not, in case of the omission of its officers to preserve a written record, give such proofs in support of its rights as would be admissible in suits against it to support adverse rights. The true question in such case would seem to be, not which party was plaintiff or defendant, but whether the evidence was the best the nature of the

case admitted of, and left nothing behind in the possession or control of the party higher than secondary evidence.'

"It has also been held that, by failing to keep a record of its proceedings, a corporation may be estopped from objecting to parol evidence of its acts." Jones' Commentaries on Evidence (2nd Ed), Vol. 2, § 778, p. 1440.

"It is believed that the rule is stronger than that stated by Mr. Justice Story, and even the breach of a statutory or charter provision requiring transactions of the directors to be recorded, whatever may be the effect on the officers in failing to do so, will not render invalid such unrecorded acts." Thompson on Corporations, 3rd Ed., § 1952.

"The doctrine is now almost universally recognized that parol evidence is admissible to prove the unrecorded acts and transactions of the corporate body or of its board of directors." Thompson on Corporations, 3rd Ed., § 1957.

The records—the primary or best evidence—of the livestock association were absent from the jurisdiction of the superior court of Washington. That foreign corporation, with offices outside the state, was not a party to this action. We may not presume that the records of the livestock association were in the possession of the respondent. Quite the contrary. The corporation was insolvent or bankrupt. The presumption is conclusive that the books and records of the corporation were in the custody of the receiver for the corporation. Under such circumstances, secondary evidence, parol evidence, was admissible to prove the contents of the corporation's books or to show what occurred at the two board meetings mentioned above.

"Many cases are authority for the rule that if books or papers necessary as evidence in a court are in the possession of a person not a party to the suit and without the jurisdiction of the court, secondary evidence may be given to prove the contents of such books

or papers, and that it is not necessary to show that a reasonable effort has been made to obtain the originals." 10 R. C. L. 913, § 70.

If promoter Kelly, who later became manager and president of the corporation, made contracts, prior to incorporation, in the interests of his corporation, and those contracts were approved by the company subsequent to incorporation, such ratification is binding upon the corporation. The determinative question is whether there was a ratification of Kelly's contracts ánd an acceptance of the benefits thereunder, with the resultant assumption of the burdens incident thereto. The trial court is in a better position than we to say which position the evidence preponderantly supports; therefore, the judgment is reversed, and the cause remanded for that purpose.

TOLMAN, PARKER, HOLCOMB, and MITCHELL, JJ., concur.