NORTHWEST STEEL ROLLING MILLS,
Inc., v. COMMISSIONER OF INTER-
NAL REVENUE.
No. 9207.

Circuit Court of Appeals, Ninth Circuit.
March 1, 1940.

Eggerman & Rosling, D. G. Eggerman, and Walser S. Greathouse, all of Seattle, Wash., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, L. W. Post, and James P. Garland, Sp. Assts. to Atty. Gen., for respondent.

Robert L. Judd, of Salt Lake City, Utah, and Harry O. Glasser, of Enid, Okl., amici curiæ.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This appeal involves the question of the validity of a levy of a surtax under the Revenue Act of 1936 [c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts] upon the undistributed profits of the taxpayer. The taxpayer contends that it is entitled to a credit under Section 26 of the Act, which reads in part as follows:

"Sec. 26. Credits Of Corporations.

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax— * * *

"(c) Contracts Restricting Payment of Dividends.—

"(1) Prohibition on payment of dividends.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * *

"(2) Disposition of profits of taxable year.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. * * *"

Taxpayer is a Washington corporation, with its principal place of business in that State. From 1926 to 1936 the taxpayer

was indebted to a Seattle bank, which indebtedness was evidenced by 90 day notes which were renewed from time to time. The original indebtedness amounted to $150,000, but by January, 1934, it had been reduced to approximately $115,000. In January, 1934, when the taxpayer proposed to renew the notes the bank officers conditioned the renewal of the notes on the payment by the taxpayer of $1,000 a month in reduction of the principal amount thereof, together with the payment on the indebtedness of any available surplus in taxpayer's treasury after the payment of its current operating expenses. Taxpayer was given to understand by the bank that any breach of this condition would result in the bank's having a receiver appointed for the taxpayer's assets. This condition to the renewal of these notes was not reduced to writing. From January, 1934, to July, 1936, the amount of taxpayer's indebtedness to the bank was reduced to the sum of $85,-000, and this amount was paid on July 6, 1936.

Throughout the year 1936 the general incorporation laws of the State of Washington provided in part as follows [Uniform Business Corporation Act, Laws of 1933, p. 785, sec. 24, of the State of Wash.; Rem.Rev.Stat. Wash. §.3803—24]:

"In computing the aggregate of the assets of the corporation, the board of directors shall determine and make proper allowance for depreciation and depletion sustained, and losses of every character. Deferred assets and prepaid expenses shall be written off, at least annually in proportion to their use as may be determined by the board of directors.

"4. No corporation shall pay dividends,

"a. in cash or property, except from the surplus of the aggregate of its assets over the aggregate of its liabilities, including in the latter the amount of its capital stock, after deducting from such aggregate of its assets the amount by which such aggregate was increased by unrealized appreciation in value or revaluation of fixed assets; * * *."

As of December 31, 1935, the taxpayer's operating deficit was $76,983.26. Its net income for 1936 was $76,049.71. At the beginning of the year 1936 the taxpayer had a surplus by appraisal of $134,173.90.

■ Taxpayer first relies upon the oral contract with the bank under which it agreed to apply all available surplus to the principal of its notes. The contention is

that the Revenue Act unreasonably discriminates between written and oral contracts expressly providing for disposition of earnings and profits in discharge of a debt, and that it therefore violates the Fifth Amendment of the United States Constituion. We think there is a rational basis for the distinction between written and oral contracts. As stated by the respondent in its brief: "It is a comparatively easy matter for the Bureau of Internal Revenue to ascertain whether an ordinary written contract prohibits payment of dividends. But it would be an almost insuperable burden for the Bureau to determine the validity and scope of oral contracts of that nature".

Taxpayer next relies upon the Washington statutes prohibiting payment of dividends except out of profits. The contentions are, first, that the Congress intended to include a corporate charter as a "written contract", and, second, that if the Act is construed not to include a corporate charter as a written contract, the Act is unconstitutional.

The respondent argues that the taxpayer has failed to prove that it could not legally have paid dividends during the taxable year 1936. It points to the "surplus by appraisal" at the beginning of 1936, and states in its brief: "Certainly the mere fact that taxpayer had an operating deficit at the beginning of the year would not prevent it from declaring dividends out of its profits during the taxable year so long as it had sufficient surplus and the record does not show that it did not. * * * the record does show 'surplus by appraisal' of some $134,000 and that would be more than sufficient to cover a dividend of $76,000 unless such surplus was created by 'unrealized appreciation in value or revaluation of fixed assets' and the record does not show that it was".

■ We think that the taxpayer has proved that it could not have legally paid the dividends. There is no dispute but that the deficit had accumulated from January 2, 1934. And furthermore, the taxpayer's vice-president and general manager testified:

"Q. Had the company ever been in a position to pay the bank in full prior to that time? A. No, sir.

"Q. Had it ever been in a position to pay dividends? A. Not that I know of."

■ Respondent's claim that this evidence cannot be considered because of the fact that it is a conclusion of the witness

is without merit, as the evidence was admitted without objection, and being undisputed it constitutes proof of the fact.

This brings us to a consideration of the question of whether the Revenue Act of 1936 should be construed as including taxpayer's charter as a "written contract executed by the corporation prior to May 1, 1936" which "expressly deals with the payment of dividends".

It is contended by the respondent that even assuming that the charter might be construed to be a "contract executed by the corporation", it does not "expressly deal with" the payment of dividends. This was the holding of the Circuit Court of Appeals for the Eighth Circuit in Crane-Johnson Co. v. Commissioner, 1939, 105 F.2d 740, 743, wherein the court said that "if there is such a contract, it is not an express one, but is implied".

In our opinion the Crane-Johnson case confuses the wording of the statute in question, that is, "a written contract executed by the corporation prior to May 1, 1936 which provision expressly deals with the payment of dividends".

It is settled law that: "Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms." Farmers' Bank v. Federal Reserve Bank, 262 U.S. 649, 660, 43 S.Ct. 651, 655, 67 L. Ed. 1157, 30 A.L.R. 635. See also Von Hoffman v. Quincy, 4 Wall. 535, 550, 18 L.Ed. 403.

Aside from that, the taxpayer's articles of incorporation "expressly" refer to the general incorporation laws of the State of Washington, as follows:

"That the purposes and objects for which this corporation is formed are:
* * *

"Nineteenth: To exercise such powers as are or may be granted or conferred by the general incorporation laws of the State of Washington * * *."

The object of our search, therefore, is to see whether or not the laws of the State of Washington, which are so incorporated into the taxpayer's charter, "expressly deal[s] with" the payment of dividends.

It is suggested that since the law is general and does not refer in particular to the taxable year in question, it does not comply with the wording of the statute requiring the contract to "expressly deal with the payment of dividends". This construction of the statute is too narrow. The mere fact that the statute prohibits the payment of dividends during *any* year in which there is a deficit, certainly cannot militate against the idea that the statute "expressly" deals with the disposition of profits during the year in question. See G. B. R. Oil Corporation v. Commissioner, 40 B.T.A. 737.

It is argued that in any event, the corporate charter cannot be construed to be a "written contract executed by the corporation prior to May 1, 1936", within the meaning of the statute.

At the outset it should be mentioned that the date of incorporation was some ten years prior to 1936, therefore there is no difficulty as to this portion of the quoted clause.

The principle that a corporate charter is a contract between the state and the corporation and its members was established in Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629, and has been reaffirmed many times. The argument, however, is that the articles of incorporation are not "executed by the corporation" but are executed by its incorporators, and that the incorporators are not agents of the corporation since there cannot be an agency before the existence of the principal.

Be that as it may, the fact remains that by accepting the corporate charter, the corporation became bound by the acts of the incorporators in so executing the articles, whether we rely upon a theory of novation, ratification, or continuing offer.

It is worthy of note that the law of the State of Washington is that a corporation may "ratify" the pre-organization contracts of its incorporators and thus become a party to the contract. See Walnut Park Lumber & Coal Co. v. Roane et al., 1933, 171 Wash. 362, 17 P.2d 896, 898 wherein the court said: "If promoter Kelly, who later became manager and president of the corporation, made contracts, prior to incorporation, in the interests of his corporation, and those contracts were approved by the company subsequent to incorporation, such ratification is binding upon the corporation".

We do not believe that Congress intended the word "executed" to have such a narrow meaning as to exclude the act of becoming bound by ratification. As stated

in 23 Corpus Juris 278: "The words 'execute', 'executed' and 'execution' when used in their proper sense, convey the meaning of carrying out some act or course of conduct to its completion. Thus when the terms are applied to a written instrument, they include the performance of all acts which may be necessary to render it complete as an instrument importing the intended obligation, of every act required to give the instrument validity or to carry it into effect or to give it the forms required to render it valid."

The Supreme Court has said that a statute should be construed to avoid not only the conclusion that it is unconstitutional, but also grave doubts as to its constitutionality. Linder v. United States, 268 U.S. 5, 17, 45 S.Ct. 446, 69 L.Ed. 819, 39 A.L.R. 229.

 This impels the conclusion that the Act in question should be construed so as to include the taxpayer's corporate charter within the term "written contract executed by the corporation, etc.". There seems to be grave doubts as to whether there is a reasonable basis for discrimination between a written contract actually "signed" by a corporation prohibiting the payment of dividends, and the contract of the charter to which the corporation is as fully bound, likewise prohibiting the distribution of profits. The "administrative convenience" which we have above held lends a basis for the distinction between oral and written contracts, would not seem to apply with equal force to this situation.

In the view that we take of the case it is unnecessary for us to consider the remaining contention of the taxpayer, that the Act is an attempt to control distribution of profits, a matter reserved to the states by the Tenth Amendment of the Constitution; and the contention of amici curiae that the tax is on the stockholder's share in the taxpayer's accumulated profits which is not authorized by the Sixteenth Amendment.

Reversed.

HANEY, Circuit Judge (dissenting).

Elaborate argument may be made that as a general rule the charter of a corporation is considered to be a contract [1] in certain branches of the law in order to bind a corporation for acts of its promoters, but I believe such an argument is inapposite here. A question as to the liability of a corporation for the acts of a promoter, or for violation of its charter is not presented. The question presented is whether a corporate charter is "a written contract executed by the corporation" within the meaning of § 26 (c) (1 and 2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts.

It is clear that the quoted words might have been used in either of two senses, i. e. (1) a written contract "binding on" the corporation; or (2) a written contract "signed by" the corporation. The majority hold that the first sense was intended. I disagree, because such a construction renders the words "executed by" superfluous. Had such words been intended in the sense of "binding on" such idea would have been as fully expressed by simply saying "a written contract of a corporation". If there was a contract, it was binding on the corporation, and it was unnecessary to say more. Furthermore, had such sense been intended, it could and, I believe, would have been expressed unambiguously by saying "a written contract binding on the corporation". It seems clear to me that the construction given the words "executed by" by the majority renders them superfluous and meaningless.

One rule of statutory construction is stated in Platt v. Union Pacific R. R. Co., 99 U.S. 48, 58, 25 L.Ed. 424, that: "* * a legislature is presumed to have used no superfluous words. Courts are to accord a meaning, if possible, to every word in a statute. * * *" I believe the construction of the majority violates that rule. On the other hand, the word "executed" is given significance by construing it as being used in the sense of "signed". I believe that meaning should be given to the word here.

In this connection, both parties rely on the legislative history of the statute. I think such history is not helpful here because considerable revision of proposed bills leading to enactment of the statute in question was made "in conference without any new statement of legislative intent". 3 Paul & Mertens, Law of Federal Income Taxation § 32A.01 (1938 Cum. Supp.).

Independently of the foregoing I think we are required to construe the word "executed" in the sense of "signed" because of the following from White v. United

---

[1] See 3 Paul & Mertens, Law of Federal Income Taxation § 32A.43 (p. 352 et seq. 1938 Cum.Supp.).

States, 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172: "* * * Moreover, every deduction from gross income is allowed as a matter of legislative grace, and 'only as there is clear provision therefor can any particular deduction be allowed. * * * A taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.' * *" Here it is not at all "clear" that appellant is entitled to the deduction.

Having reached the conclusion that "executed" in the statute means "signed", it is necessary to determine whether "a written contract" includes a corporate charter. I think it does not. Properly construed, I think the statute means only those written contracts which are "signed" on behalf of the corporation. The articles of incorporation which become the charter of the corporation, are not signed by the corporation, but are signed by the incorporators. The articles are simply a step in the formation of the corporation. "The promoters of a corporation are not in any sense the agents of the corporation before it comes into existence, for there cannot be an agency unless there is a principal." 18 C. J.S., Corporations, page 522, § 120.

The remaining contentions argued are that the act in question is unconstitutional. The historical background of the act may be found in Martin, Taxation of Undistributed Corporate Profits, 35 Mich. L. Rev. 44.

Petitioner contends that the act is an attempt to control distribution of profits, a matter reserved to the states by the Tenth Amendment of the Constitution. Amici curiae contend that the tax is one on the stockholder's share in the petitioner's accumulated profits which is not authorized by the Sixteenth Amendment; that the actual purpose of the act is to regulate economic conduct under the thin guise of raising revenue and is a penalty on conduct; and that actually the tax is one on capital which is not authorized by the Sixteenth Amendment.

I think each of these contentions confuses purpose with motive. The purpose of the act is expressed therein when it levies a tax upon "net income" to be measured by a percentage of "undistributed net income". It may be that the things or reasons which motivated the expression of the purpose by Congress were not, considered alone, within the power of Congress. However, we are not concerned with the motives of Congress. Sonzinsky v. United States, 300 U. S. 506, 513, 57 S.Ct. 554, 555, 81 L.Ed. 772, contains much of pertinence:

"Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed. But a tax is not any the less a tax because it has a regulatory effect * * * and it has long been established that an Act of Congress which on its face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed. * * *

"Inquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon it is beyond the competency of courts. * * * They will not undertake, by collateral inquiry as to the measure of the regulatory effect of a tax, to ascribe to Congress an attempt, under the guise of taxation, to exercise another power denied by the Federal Constitution. * * *"

It is enough if one purpose is within the Congressional power, notwithstanding there may have been other purposes, which, considered alone, Congress had no power to make effective. Stephenson v. Binford, 287 U.S. 251, 276, 53 S.Ct. 181, 77 L.Ed. 288, 87 A.L.R. 721; Hampton & Co. v. United States, 276 U.S. 394, 412, 48 S.Ct. 348, 72 L.Ed. 624. See also: Henneford v. Silas Mason Co., 300 U.S. 577, 586, 57 S.Ct. 524, 81 L.Ed. 814. Wholly apart from these views, I think Helvering v. Nat. Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346, precludes us from upholding the contentions made.

Finally, both petitioner and amici curiae contend that the act unreasonably discriminates between written and oral contracts prohibiting distribution of earnings and profits in violation of the Fifth Amendment of the Constitution. "The power of Congress in levying taxes is very wide and where a classification is made of taxpayers that is reasonable, and not merely arbitrary and capricious, the Fifth Amendment cannot apply". Barclay & Co. v. Edwards, 267 U.S. 442, 450, 45 S.Ct. 348, 349, 69 L. Ed. 703. "A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it."

**292**

Carmichael v. Southern Coal Co., 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245, 109 A.L.R. 1327. The rule applies to the federal government. Steward Machine Co. v. Davis, 301 U.S. 548, 584, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293.

Respondent states in his brief: "It is a comparatively easy matter for the Bureau of Internal Revenue to ascertain whether an ordinary written contract prohibits payment of dividends. But it would be an almost insuperable burden for the Bureau to determine the validity and scope of oral contracts of that nature." I think it is apparent that the difficulties which would arise regarding the proof of an oral contract, and its validity, including the effect of statutes of fraud, form a rational basis for the classification. "Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small incomes or small taxpayers and that meted out to others." Carmichael v. Southern Coal Co., supra, 301 U.S. at page 511, 57 S.Ct. at pages 868, 873, 81 L.Ed. 1245, 109 A.L.R. 1327. See also Madden v. Kentucky, 60 S. Ct. 406, 84 L.Ed. —, 125 A.L.R. 1383, January 29, 1940. Reason compels the conclusion here that likewise administrative convenience and expense are a rational basis for the classification made.

I think the decision should be affirmed.