## UNITED STATES v. BUCKLEY et al.

### No. 70756.

District Court of the United States for the District of Columbia.

April 15, 1943.

John W. Fihelly, Asst. U. S. Atty., and G. M. Fay, Sp. Atty., Department of Justice, both of Washington, D. C., and James A. Harrington, Sp. Asst., to the Atty. Gen., for the United States.

Henry I. Quinn and H. Max Ammerman, both of Washington, D. C., for defendants Joseph A. Rosenkranz, Louis J. Rosenkranz and National Schools.

Leo A. Rover, of Washington, D. C., for defendant Francis Buckley.

LAWS, Justice

The statute, 18 U.S.C.A. § 80, which is necessarily concerned in both counts of the indictment in this case makes it a crime to "knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations."

The gravamen of the offense charged by the first count of the indictment is a conspiracy to defraud the United States first, by wilfully concealing a material fact, and second, by making a false or fraudulent statement. The gravamen of the offense charged by the second count is the actual wilful concealment of a material fact and the actual making of a false or fraudulent statement.

The words of the statute: "knowingly and willfully falsify or conceal", also the words "false and fraudulent statements", necessarily refer to an evil or wrongful purpose or state of mind. And there can be no difference between the purpose in a conspiracy to conceal or falsify and the purpose in an actual concealment or falsifying. Therefore I believe it is clear that a wrongful purpose on the part of the defendants is an essential element which the prosecution must prove in each offense charged.

To state the conclusion which I have reached on the pending motions, I think it may be useful to review briefly some high points of the evidence which bear upon this element of intent of the defendants. It has been shown that prior to the outbreak of the present war, the defendant corporation and the defendants Rosenkranz were conducting a school for boys in California. There came a time, after war was declared, when the school was losing its students. Circular letters were sent out trying to obtain students who were interested in the aircraft industry. In response to one of these circulars there came to call on the Rosenkranz defendants the defendant Buckley, who advised them he had received the circular and while he doubted he could be of any help along lines suggested in the circular, nevertheless he thought he might be of assistance in another way. He stated he was going to Washington on other business and while there he thought he might obtain a contract with the Government to use defendants Rosenkranzs' school for training young men inducted into the army. The evidence tends to indicate that an agreement was substantially worked out at this time by which Buckley would be paid a fee contingent upon his obtaining such a contract or contracts from the Government. The prosecution has shown by stipulation that Buckley then was engaged in business as an investment, insurance and real estate broker. It has not shown whether he did any other brokerage business and it has not shown what the Rosenkranz defendants knew, or did not know, concerning the business of Buckley. But for the purpose of this decision, I think perhaps it may be conceded Buckley had no

other brokerage business than investment, insurance and real estate, and that the Rosenkranz defendants knew the precise nature and limited extent of his business.

There came a time when contracts with the Government were about to be obtained by Buckley in behalf of the school and when they were to be reduced to writing. At the time the first of such contracts was submitted the Rosenkranz defendants were called upon to sign a form of contract drafted by the War Department, which contained a warranty clause required by Executive Order of December 27, 1941 No. 9001, 50 U.S.C.A.Appendix § 611 note. This warranty clause read as follows: "The contractor warrants that he has not employed any person to secure this contract upon agreement for a commission, percentage, brokerage, or contingent fee. Breach of warranty shall give the Government the right to annul the contract or at its discretion to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fee. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made by bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business."

It must be noted the War Department, in submitting this language which was to be used as to non-employment of contingent brokers, made it clear to defendants that the warranty was not intended to extend to a bona fide established investment broker maintained by defendants to obtain business. How, then, would the language be interpreted? Under some conditions a commission broker might be employed, that is, where he was an established commercial or selling broker. Under other conditions, a certain type of person—one not an established broker—might not be employed to secure the contract, under pain of possible annulment of the contract, or deduction of commissions from the contract price.

The evidence in this case shows one of the Rosenkranz defendants had some concern over the interpretation of this warranty and spoke to Buckley about it; that Buckley stated it did not apply, but was intended to refer only to employment of Congressmen. It seems that one of the Rosenkranz defendants then executed the contract with the warranty clause in it and thereafter, when additional contracts were presented with the same form of warranty, no further question was raised by any of the defendants with regard to it.

I am not committing myself to the interpretation attributed to Buckley, said to have been acquiesced in by the Rosenkranz defendants. But it is not entirely clear from the language of the President's Order and the history of its adoption as it has been outlined to me what is the evil type of broker intended to be guarded against.

Here the broker employed by the contractors was a commercial and a selling agent. He was one whose business customarily is conducted on a contingent fee basis. There is no evidence he had influence at the War Department or in the Army. There is no showing he made any questionable or improper contacts or that he planned any. So far as the evidence indicates, his entire relations with Government and Army officers were wholesome and proper.

The prosecution frankly has conceded there is question as to the meaning of the words "maintained by the contractor", in the President's Order, and that reason would seem to compel the view that the contractor would not offend the order simply because he occasionally employed a broker to obtain a contract.

■■ Under these circumstances, must this Court conclude there is tangible evidence that the persons who employed this broker had an evil intent to frustrate the purpose of the President's Order, when or if, as appears reasonable to assume, they decided Buckley was a bona fide commission broker not denounced by the order? I think not. It seems to me that to reach such a conclusion in this case, the Court would have to presume guilty intent, whereas the correct rule of law is that the evidence of a wrongful intent in a criminal case must be clear and convincing.

It is true there is some evidence in this case indicating there came a time when the Rosenkranz defendants might have become convinced they had done a wrongful act in making the warranties. There is some indication that after an investigation by the Government began, the Rosenkranz defendants did some acts and made some statements indicative of a consciousness of wrong. But the evidence as to these acts and statements is quite as consistent with a fear that they unwittingly might have made a misstatement as with an acknowledgment

996

that they knowingly had done wrong at the time the warranties were made. The evidence is not at all strong or convincing.

The testimony against Buckley is weaker than that against the Rosenkranz defendants. The prosecution agrees the corporation defendant must stand in the same position as its officers, the Rosenkranz defendants.

Because of the reasons stated, I have decided I must grant the motion of all defendants to direct a verdict of not guilty. Having come to this conclusion upon an assumption of Buckley's limited brokerage and knowledge by the Rosenkranz defendants of its limitations, and because of Mr. Fihelly's suggestion this morning that the Government does not desire to offer any further testimony on this point, of course, no purpose would be served by reopening the case for the further testimony.

The motion for a directed verdict in favor of the defendants will be granted.