**WALKER v. UNITED STATES.**
No. 4300.

United States Court of Appeals
Tenth Circuit.
Oct. 17, 1951.

Elmore A. Page, Tulsa, Okl., for appellant.

John S. Athens, Tulsa, Okl. (Whit Y. Mauzy, Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, Anna Lee Walker, was indicted in an indictment containing three counts, charging her with violating Title 18 U.S.C.A. § 1001.[1] Count one charged that on or about March 1, 1951 * * * Anna Lee Walker knowingly and wilfully made a false representation in a matter within the jurisdiction of an agency of the United States, in that she at the time and place set out in the indictment procured a prescription for four ¼ grain morphine sulphate tablets from Dr. O. A. Flanagan, falsely representing to him that her address was 822 South Cheyenne, Tulsa, Oklahoma. Count two charged that on or about March 1, 1951, she knowingly and wilfully used a false writing (the prescription which she had obtained), knowing same to contain a false statement, in that she uttered and filed with the William Penn Drug Store, 408 South Boston, in the City of Tulsa, Oklahoma, the prescription which she had obtained from Dr. Flanagan, knowing that said prescription contained the false statement that her address was 822 South Cheyenne, Tulsa, Oklahoma. Count three charged that on or about March 1, 1951, she knowingly and falsely made a false writing, knowing same to contain a false entry, in that she purchased from the Sooner Drug Store in Tulsa one ounce of paregoric and knowingly and falsely registered for such purchase her address as 1719 South Main Street, Tulsa. A trial was had to the court. Appellant was found guilty on all three counts and was sentenced to a term of imprisonment of eighteen months on each count, the sentences being made to run concurrently.

The evidence shows that prior to March 1, 1951, appellant had been living with her parents at 106 First Street South East, Miami, Oklahoma; that her occupation was that of a waitress; that on February 28 she came to Tulsa, bringing with her all of her clothes; that she came at the solicitation of Betty Lightfoot, who was living with her mother at 1719 South Main Street, Tulsa, Oklahoma; that Betty met her at the station; that she went with her to her mother's home where she left her grips and stayed all night; that on the evening of February 28 she and Betty went to the apartment of Sherry Delphine Smith at 802 South Cheyenne, Tulsa; that there she changed into some clean clothes belonging to Delphine; that she and Betty then went out and apparently stayed out all night and then returned to Betty's mother's home at 1719 South Main, wearing Delphine's clothes. She testified that because of conditions at Betty's mother's home, on her first visit to Delphine's apartment, she talked with her about staying at her apartment until she found work; that she talked with her some time the next morning and that it was understood that she was to come to Delphine's house that afternoon and stay with her.

About ten o'clock on the morning of March 1, she and Betty Lightfoot went to the Sooner Drug Store, where she obtained the paregoric involved in count three of the indictment. The records required to be kept by druggists for the sale of paregoric under the Federal regulations contained appellant's signature and gave her address as 1719 South Main. Thereafter about 1:15 P. M. she went to the office of Dr. Flanagan, where she obtained a prescription for four ¼ gain morphine sulphate tablets, set out in count one. The prescription was filled out and signed by Dr. Flanagan, who recorded her address as 822 South Cheyenne. She took the prescription giving her address as 822 South Cheyenne to the William Penn Drug Store, where it

1. Title 18 U.S.C. § 1001 reads as follows: " Statements or entries generally.
    "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

was filled and was given by the pharmacist to Betty Lightfoot, appellant being present in the store.

Thomas Richison, a witness called on behalf of the Government, testified that he was operating the Sooner Drug Store; that he kept a register for the recording of sales of exempt narcotic drugs; that anyone purchasing such drugs must register them in this register; that it was the practice in his store to require the purchaser to register such purchase, rather than the clerk who makes the sale. Dr. Flanagan testified that appellant, Anna Lee Walker, gave him the address 822 South Cheyenne and that he so recorded it in the prescription.

Delphine Smith, with whom appellant claims to have made arrangement to live some time during the day of March 1, does not live at 822 South Cheyenne, but lives at 802 South Cheyenne. H. B. Westover, the Federal Narcotic Agent, who arrested appellant, testified that at the time she told him she had given the address 806 and not 822 to the Doctor when she procured the prescription; that appellant told him that 806 was the address of Delphine Smith. There is no residence at 806.

Two grounds are urged for reversal— (1) that the evidence is wholly insufficient to sustain the judgment of guilty, and (2) that the judgments are void because Title 26 Code of Federal Regulations §§ 151.168 and 151.185, under which the charges are laid, are not within the power delegated to Congress by the United States Constitution.

The attacks upon counts one and two may be considered together. When appellant obtained the prescription for the morphine, upon which counts one and two were predicated, her address in the prescription and in the required record in the William Penn Drug Store was recorded as 822 South Cheyenne Street, Tulsa. That was not her address at the time she got the prescription and the drugs. The only questions are—did she knowingly and wilfully give an erroneous address to Dr. Flanagan when she obtained the prescription, and did she later present it at the drug store where she obtained the drugs and, if so, did she do this wilfully and knowingly. Dr. Flanagan testified that she gave him this address and that he recorded it as she gave it to him in the prescription. True, on cross-examination, he testified that he could have been mistaken and that he was "not infallible", but this did not overcome his positive statement that he recorded her address as she gave it to him. It is more the mark of a witness who wants to be fair, rather than evidence of a doubt as to what occurred.

If appellant knowingly and falsely gave her address as 822 South Cheyenne, Tulsa, when she obtained the prescription for the morphine tablets, she is guilty of the offense laid in count one and also of the offense charged in count two. Wilfulness is an element of the offense charged[2] and it was necessary for the Government to prove beyond a reasonable doubt that appellant wilfully and knowingly gave a false and erroneous address. To prove this element, it was not necessary, however, as contended by appellant, that the Government prove that she had in fact an evil intent. In some penal statutes, the word "wilful" connotes moral turpitude or evil of mind, but in others it means no more than that the interdicted act is done deliberately and with knowledge.[3] We think that clearly is the sense in which the term is used in the statute under which the charges in the three counts of the indictment are laid. In resolving this question, it was the duty of the court to consider all the evidence as well as the inference deducible therefrom. When so considered, we are of the view that the evidence amply supports the court's judgment on counts one and two.

---

2. United States v. Buckley, D.C., 49 F. Supp. 993; Todorow v. United States, 9 Cir., 173 F.2d 439; McCoy v. United States, 9 Cir., 169 F.2d 776; United States v. Uram, 2 Cir., 148 F.2d 187;

United States v. J. Greenbaum & Sons, 2 Cir., 123 F.2d 770.

3. See Browder v. United States, 312 U.S. 335, 61 S.Ct. 599, 85 L.Ed. 862; Nabob Oil Co. v. United States, 10 Cir., 190 F. 2d 478, and cases cited therein.

As to Count three the contention is that there is no evidence in the record to sustain the verdict of guilty or the judgment entered thereon. It is argued that appellant had left Miami and had come to Tulsa to make her permanent home there and that at the time of the transaction set out in Count three 1719 South Main Street was her correct and only address. Since the sentence on each count was eighteen months and the three sentences were made to run concurrently, it is not necessary for us to review the conviction on the third count. Assuming without deciding that the contention made is correct, since the sentences on Counts one and two run concurrently with the sentence on Count three, the conviction on Counts one and two are sufficient to sustain the sentence appealed from.[4]

Appellant next contends that, since the purchase of the paregoric and the morphine sulphate tablets were local sales and dispensations and since no federal tax was involved, the control which the Government sought to set up over such sales through the applicable regulations was void for want of Constitutional power. It is argued that the control of all such local sales rests with the states and to permit Federal regulation thereof would violate the Constitutional rights accorded the sovereign states. Young v. United States, 315 U.S. 257, 62 S. Ct. 510, 86 L.Ed. 832, and Linder v. United States, 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819, on which appellant relies, do not sustain this contention. All the Young and Linder cases held was that the second proviso of § 6 of the Harrison Anti-Narcotic Act, as amended, 26 U.S.C.A. § 2551 which required any manufacturer, producer, compounder or vendor (including dispensing physicians) to keep a record of the sales did not apply to physicians administering to patients whom they personally attend. The Linder case reaffirms the holding in United States v. Jin Fuey Moy, 241 U.S. 394, 36 S.Ct. 658, 60 L.Ed. 1061, that the narcotic law is a revenue measure and that

Congress could not under the pretext of executing delegated power pass laws for the accomplishment of objects not entrusted to the Federal Government. It points out that the legislation enacted must have some reasonable relation to the exercise of the taxing authority conferred by the Constitution. It reaffirms the holding in United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604, that the emphasis is on securing a close supervision of the business of dealing in these dangerous drugs by the taxing officers of the government and that it merely uses a criminal penalty to secure recorded evidence of the disposition of such drugs as a means of taxing and restraining the traffic. It does uphold the authority of the officer charged with the enforcement of the Act to pass reasonable regulations for its enforcement. § 2551 of the Act, specifically provides for records of all sales, exchanges or gifts of such preparations in such manner as the Secretary shall direct and § 2606 authorizes the Secretary to confer any of the rights, privileges, powers and duties in respect to narcotic drugs conferred upon him upon the Commissioner of Narcotics or any officer or employee of the Bureau of Narcotics and to confer or impose upon the Commissioner of Internal Revenue any of such rights, privileges, powers and duties which may be necessary in connection with internal revenue taxes.

Pursuant to this statutory authority Regulation 151.168 was promulgated providing for the manner in which practitioners should issue prescriptions and the records required of them and Regulation 151.185 was promulgated to provide for the records that were to be kept with respect to the dispensation of exempt preparations. Requiring the keeping of such records does not invade the police power of the states. Such regulations are a valid exercise of the authority delegated by the statute to promote enforcement of the revenue provisos of the Act in question.[5]

Affirmed.

---

4. Brooks v. United States, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699; Hirabayashi v. United States, 320 U.S. 81, 105, 63 S.Ct. 1375, 87 L.Ed. 1774.

5. Watson v. United States, 9 Cir., 16 F.2d 52; Lewis v. United States, 9 Cir., 170 F.2d 43.