### KRITCHER et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 7, 1927.)

No. 149.

**1. Post office ⬦49(11)—Evidence held to support conviction for using mails to defraud and cheating purchasers of shoes.**

Evidence *held* to support conviction for using mails to defraud and for cheating purchasers of shoes who ordered by mail, where defendant entered scheme whereby company was falsely advertised to have purchased 122,000 pairs of army shoes worth $6 per pair, but to be sold at $2.95.

**2. Post office ⬦49(11)—Evidence held insufficient to support conviction for using mails to defraud, where defendant's connection with companies ceased before dates referred to in indictment.**

Evidence *held* insufficient to support conviction for using mails to defraud and cheating purchasers of shoes who ordered by mail, where defendant's connection with companies ceased before dates referred to in indictment.

**3. Criminal law ⬦1037(1)—United States attorney's demands in jury's presence that defendant produce documentary evidence to be used against him held not prejudicial, in absence of objection or exception (Const. Amend. 5).**

Demands of United States attorney, in presence of jury, that defendant produce documentary evidence to be used against him, *held* not prejudicial to him, as violating immunity secured by Fifth Amendment of United States Constitution, where no objection was made and no exception taken.

**4. Criminal law ⬦1030(1)—Circuit Court of Appeals will notice error not assigned only to prevent plain injustice.**

Circuit Court of Appeals has power to notice plain error not assigned, but exercise of that power is not matter of right, and is to be used only to prevent plain injustice.

In Error to the District Court of the United States for the Southern District of New York.

A. Harry Kritcher, Jack Brenner, Elias Berlow, and Leo Berlow were convicted of violating Criminal Code, § 215, and they bring error. Affirmed as to defendant Kritcher; reversed as to the other defendants.

Frank J. Coleman, Jr., of New York City, for plaintiff in error Kritcher.

William L. Wemple, of New York City, for plaintiffs in error Brenner and Berlow.

Emory R. Buckner, U. S. Atty., of New York City (Ben Herzberg and David P. Siegel, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before MANTON and LEARNED HAND, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

MANTON, Circuit Judge. This indictment charged nine defendants with devising a scheme to defraud newspaper publishers in advertising their business, and other individuals in purchasing shoes, and the use of the United States mails in furtherance of that scheme, a violation of section 215 of the United States Criminal Code (Comp. St. § 10385). Only the plaintiffs in error who sued out this writ were put on trial, and Kritcher was found guilty on counts 1, 3, 4, and 5; the others were found guilty on counts 4 and 5.

Using the National Bay State Shoe Company as a trade-name, Goldstein, Gibson, and Weinstein, named as defendants in the indictment, set up a mail order business at 296 Broadway, New York City, about the middle of January, 1923. Kritcher entered the plan or scheme a few days after the business was started. They sent out to some 18,000 newspapers in various villages and cities of the United States requests to insert the advertisements of the National Bay State Shoe Company for the sale of its shoes. Goldstein implicates Kritcher at this time. The advertisements read that they had purchased 122,000 pair of the United States Army Munson last shoes, sizes 5½ to 12, which was the entire surplus stock of one of the largest United States government shoe contractors. It stated that the shoes were guaranteed 100 per cent. solid leather, dark tan in color, bellows tongue, dirt and water proof; that their actual value was $6, and owing to the tremendous buy they could offer them to the public at $2.95 a pair. It stated: "Send correct size; pay postmaster on delivery or send money order. If shoes are not as represented, we will cheerfully refund your money promptly upon request." They sent this advertisement to distant places, to avoid nearby publishers sending in their representatives to investigate.

Kritcher's special work was to satisfy the inquiries of the investigators. He did so in various ways. He suggested that they purchase three pair of shoes to show the investigators. Later, they bought a few hundred more, and piled them over empty boxes, so as to give a bulky appearance. It was then suggested that they move from 296 Broadway, New York City, so as to avoid receiving bills from the newspapers, and so that no one could find them. They agreed not to let the post office authorities know their new address. Kritcher said to his associates that the bill collectors could not find them and there was no sense in keeping bills. Registered mail failed to reach them. A post office clerk complained to Kritcher that he had let ten or twelve days elapse without calling for his mail, to which

he replied that it did not amount to much anyway; they were only bills from publishers for advertisements. They did not intend to nor did they pay their advertising bills. They made no such purchase as advertised. They were fraudulent representations.

On February 10th, Goldstein and Gibson quarreled and looked for a purchaser of the business. Through Kritcher's uncle, Brenner and Elias Berlow were introduced. They were associated in business at No. 6 Murray street. Kritcher was present at the conference for the purchase. Copies of the advertisements running in the newspapers were shown to Brenner and Berlow, and a statement was made that there were some 10,000 newspapers advertising for them. Goldstein testified that he told Berlow and Brenner that they did not intend to pay for this advertising. But Berlow and Brenner did not cause advertisements to be inserted, nor did they do anything about the advertising. They paid $5,000 for the business. Papers were drawn whereby it appeared that Kritcher was the seller, and Goldstein and his associates excepting Kritcher, became responsible for the obligations. Thereafter the business was conducted by the Theodore Stave Company, which was Berlow's and Brenner's concern.

When an inquiry or order was received by the National Bay State Shoe Company, it was their practice to send out a card saying that the company had transferred the order to the Theodore Stave Company as their agents. They did not stay at No. 6 Murray street more than a week. They filled orders for shoes until May 1st. This was done by making a contract with a shoe dealer, Reilly, who made deliveries, fulfilling the orders, and for this Brenner and Berlow received 50 cents on each order. They also purchased from others to fill orders, but the bulk of the orders were filled through Reilly. Later, Brenner and Kritcher entered business at No. 611 Broadway under the name of People's Sales Company. This business continued until June 1st, but Kritcher stayed on until December, 1923. Leo Berlow was a brother of Elias Berlow and worked at the People's Sales Company, filling the orders, some of which came in under the name of the National Bay State Shoe Company during May and June, 1923. There is evidence that Leo Berlow receipted for a parcel of the National Bay State Shoe Company sent out on a C. O. D. on July 1st. Brenner and the Berlows, with few exceptions, filled all the orders received, giving a shoe worth the amount charged, namely, $2.95.

The advertisements were all ordered previ-

ous to the connection of Brenner and the Berlows, and they entered the business on the promise of Kritcher that he would supply the shoes. There is further testimony that Goldstein, Chilowitz, and Kritcher organized the New York Army Supply Company at No. 25 West Broadway, and some time in April carried on business there. It appears that this company obtained the mail of the National Bay State Shoe Company and filled some of the orders without the knowledge of Brenner and the Berlows. There is testimony of victims who did not receive shoes on orders which they sent to the National Bay State Shoe Company.

[1] The 13th of August, 1923, is the date of the mailing of the letter referred to in the fourth count, and June 6, 1923, the date of the mailing of the letter referred to in the fifth count, of the indictment. The evidence was sufficient to require its submission to the jury as to the plaintiff in error Kritcher. It also supports the verdict of guilty. He took part in the scheme of defrauding.

The plaintiffs in error Brenner, Elias, and Leo Berlow did not misappropriate money orders. They sent out thousands of pairs of shoes through their arrangement with others, and there is no evidence of a remittance of money without a supply of shoes therefor. Brenner's interest seems to have ceased after the arrangement was made with Reilly to fill orders. He did apply for a lease at No. 611 Broadway, to commence May 11, 1923; but it was not executed, and some money was refunded to him. It was Kritcher who ran the business known as the People's Sales Company at No. 611 Broadway. When the business was sold to Brenner and Berlow, the purchasers moved into the Theodore Stave Company at No. 30 Church street, where they continued until April, when they made the arrangement with Reilly, and the latter from then on filled the orders.

[2] It was at this time that Kritcher began abstracting orders from Brenner's and Berlow's mail and taking it to his associates, Goldstein and Chilowitz, operating as the New York Army Supply Company, in which Kritcher was a partner. Neither Elias nor Leo Berlow had any connection with that business. From May 15th Brenner had no connection with the business saving that once he signed a return C. O. D. package. This evidence does not support the claim that they were receiving money orders and not sending shoes. Their connection with any of the companies ceased before the dates referred to in the indictment. As to them, the court directed a verdict of not guilty on counts 1 and 3.

These were the counts relating to cheating the newspapers. We think there is no proof connecting these three plaintiffs in error with a scheme of cheating purchasers of shoes and using the mails, as referred to in counts 4 and 5, and that their conviction should be reversed.

[3] The plaintiff in error Kritcher argues that throughout the trial the United States attorney demanded, on 27 occasions, in the presence of the jury, that he produce documentary evidence to be used against him. This, it is said, was prejudicial and constituted error, under the authority of McKnight v. United States (C. C. A.) 115 F. 981. It was there held that to permit a demand on a defendant in a criminal case, in the presence of the jury, to produce a paper or document containing incriminating evidence against him, was a violation of the immunity secured to him by the Fifth Amendment of the Constitution. The demand was made there, because it was supposed to be necessary to authorize the introduction of secondary evidence.

On the first occasion, when the demand was made of this plaintiff in error, his counsel objected to the identification of a copy of a directory which the government had on hand, on the ground that there was no evidence that the original was not in existence. Thereupon the United States attorney called upon the plaintiff in error, pursuant to notice, to produce the original. There was no further objection or exception, when secondary evidence was offered. On the second occasion, when a demand was made, counsel for the defense contented themselves by saying that they did not have the document. On the third demand, counsel objected, stating that, "If the government wishes a certain paper produced, they must serve written notice." Thereupon written notice to produce was served preliminarily to introducing secondary evidence.

No exception was taken as each demand was made, and the record merely shows that the defendants did not produce the documents. In one instance of a demand, counsel for Kritcher stated that he had a large batch of correspondence; that he had searched his mail for the letter called for, and could not find it; but there was no objection or exception taken to the admission of secondary evidence. Without objection or exception, the question is not presented as to whether the McKnight case is applicable. The conduct of the United States attorney and his demands, taken with the accommodating attitude of counsel and his failure to object or except to the demands, lead us to hold that

there was nothing incriminatory in such demands, and no prejudice worked against the plaintiffs in error by the making of them. Bain v. United States (C. C. A.) 262 F. 666; Hanish v. United States (C. C. A.) 227 F. 585; Foster v. United States (C. C. A.) 178 F. 173.

[4] Moreover, the plaintiff in error did not assign this as error in suing out this writ, and, while we have the power to notice a plain error not assigned, the exercise of that power is not a matter of right, and is to be used only to prevent a plain injustice. Degnan v. United States (C. C. A.) 271 F. 291.

The other errors assigned we have examined, and find that they are without merit.

Judgment affirmed as to Kritcher, and reversed as to Brenner and Leo and Elias Berlow.