UNITED STATES, Appellee

v

MARCUS E. W. DeBELL, Staff Sergeant, U. S. Air Force, Appellant

11 USCMA 45, 28 CMR 269

No. 13,087

Decided December 4, 1959

*Captain Prichard E. Gray* argued the cause for Appellant, Accused.

With him on the brief were *Lieutenant Colonel James L. Kilgore* and *Captain Norman J. Nelson.*

*Captain Richard T. Yery* argued the cause for Appellee, United States. With him on the brief were *Colonel John F. Hannigan, Lieutenant Colonel Robert W. Michels,* and *Major Timothy G. O'Shea.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of larceny of $25.00 (Charge I), and a number of specifications alleging wrongful and dishonorable failure to maintain funds in the bank to pay checks drawn thereon (Charge II), in violation of Articles 121 and 134, respectively, Uniform Code of Military Justice, 10 USC §§ 921, 934. Reviews of the conviction preliminary to the appeal to this Court resulted in dismissal of some of the check specifications and modification of the sentence, which now extends to a dishonorable discharge and confinement at hard labor for nine months. The question before us is whether the accused was prejudiced by trial counsel's announcing before the court members that he had made demands upon defense counsel before trial for production of the original checks.

Trial counsel began the prosecution's case with evidence pertaining to the check offense alleged in specification 2, Charge II. Although the specification was later dismissed by the convening authority, we refer to the procedure in connection with this offense because it helps explain trial counsel's conduct regarding the other checks.

The first prosecution witness, an Airman, testified that he was employed part-time in a dry cleaning establishment known as Airmens Cleaners, located outside of Gate 2 at Keesler Air Force Base, Mississippi. He knew the accused. One day the accused came into the store and asked the witness to cash a $10.00 check for him. The witness agreed to do so. Since the accused had no blank checks, one was taken from the check book of the owner of the store. The accused crossed out the printed name of the drawee bank and inserted another in its place. He was given $10.00 in cash for the check. Thereafter, the owner deposited the in-

strument in his bank. A "couple days later" it was returned with a slip attached containing a notation that there were "Insufficient Funds." The owner "contacted" the accused and informed him of the "status" of the check. On payday the accused came to the store and "personally redeemed" the check. Trial counsel then offered into evidence Prosecution Exhibit I for identification, which the two witnesses identified as a photostat of the check under discussion. Defense counsel renewed an earlier objection to the effect that "a copy is not the best evidence." Before the law officer ruled on the objection trial counsel made the following statement:

"TC: Mr. Law Officer, demand was made on accused's counsel, . . . for the original of this check, and that demand, which was a written demand, will be included in the record of this trial."

At two other places in the presentation of the prosecution's case trial counsel referred to a demand to produce which he served upon defense counsel. On offering Prosecution Exhibit 3 for identification into evidence, he represented that a written demand had been made upon defense counsel for "the original of this check." Again, when a Government witness testified from the books of the NCO Open Mess to show that two bad checks had been issued to the Mess by the accused, defense counsel objected on the ground that the "checks themselves would be the best evidence." Trial counsel replied that he had made written demand on defense counsel for "these checks."

Secondary evidence is admissible to prove the contents of a writing when the original cannot be produced. Manual for Courts-Martial, United States, 1951, paragraph 143*a*(2); United States v Jewson, 1 USCMA 652, 657,

5 CMR 80. If the instrument is a check, evidence of its contents is admissible without production of the original where it appears that the original instrument was returned to the accused. Madden v United States, 20 F 2d 289, 294 (CA 9th Cir) (1927), cert den, Parente v United States, 275 US 554, 72 L ed 423, 48 S Ct 116. The Government is not required to demand production of the instrument from the accused as a condition precedent to the admission of other evidence to establish its contents. Heller v United States, 104 F 2d 446, 448 (CA 4th Cir) (1939); Linsansky v United States, 31 F 2d 846, 850 (CA 4th Cir) (1929). In fact, the Federal cases go further and hold that it is error for the prosecuting attorney to call upon the defense in the presence of a jury to produce evidence in its possession preliminary to introduction of secondary evidence.[1] Himmelfarb v United States, 175 F 2d 924, 944 (CA 9th Cir) (1949); McKnight v United States, 115 Fed 972, 981 (CA 6th Cir) (1902). In our opinion in United States v Allinder, 9 USCMA 575, 26 CMR 355, we quoted with approval from the *Himmelfarb* case the following statement of the rule:

"... We agree with the contention that it is error to request a defendant in a criminal case in the presence of a jury to testify or produce documents against his will, although he makes no objection thereto. However, we do not think there was prejudicial error in this case because of other circumstances. The real objection to such a proceeding is the prejudice created in the minds of the jurors in case there be a failure to produce the papers."

Trial counsel apparently was unaware of the general rule. The record clearly shows he believed that in view of the defense objection he had to show a demand to produce in order to establish a proper predicate for introduction of secondary evidence of the contents of the check. He was mistaken; and his representation in open court that a demand had been made constituted error. Error of this kind, however, does not justify reversal if it does not appear to prejudice the accused. As the Court of Appeals for the District of Columbia observed in *Himmelfarb*: "The authorities all rule that the action must be incriminating and prejudicial according to the circumstances and facts of the particular case." Supra, footnote 8, page 945; see also Annotation, 110 ALR 101, 106.

So far as Prosecution Exhibits 1 and 3 are concerned, there is no sound basis for a claim of prejudice. As to each check, a witness testified that he personally knew the accused and had received directly from him the check represented by the photostatic copy produced in court. It was also established that in each instance the accused was informed the check had been returned by the bank upon which it was drawn and that shortly thereafter the accused personally redeemed the check from the payee upon payment of the face amount. Consequently, nothing could be proved by the production of the original check which was not already established by the available and admissible copies. It is most unlikely, therefore, that the mere statement by trial counsel that he had served the demand to produce upon defense counsel influenced the court members in their consideration of the accused's guilt or innocence. Hanish v United States, 227 Fed 584, 586 (CA 7th Cir) (1915). Nor does the record of trial indicate that trial counsel deliberately intended to flout the rules of evidence in an effort to embarrass the defense. United States v Johnson, 3 USCMA 447, 13 CMR 3. We have already remarked that the record demonstrates he simply misunderstood the extent of the showing he was required to make for the introduction of secondary evidence. See Gridley v United

---

[1] The situation in this case should be distinguished from one in which the accused is asked on cross-examination to produce documents referred to by him in his direct examination. Ziegler v United States, 174 F 2d 439, 444–447 (CA 9th Cir) (1949); Bloch v United States, 261 Fed 321, 326 (CA 5th Cir) (1919).

States, 44 F 2d 716, 736 (CA 6th Cir) (1930).

A somewhat different situation is presented by the demand in regard to the checks given to the NCO Open Mess. Here the exhibit was not an exact replica of the original. The secondary evidence of these checks consisted of entries from the check register of the NCO Open Mess. The records did not indicate whether the checks had been returned to the accused, but there was other substantial evidence to show this fact. When the first check was returned by the bank, the accused came to the Mess. He had with him "the money" and wanted "to pick up the check." The witness referred him to the cashier. A law enforcement agent who investigated the case testified, without objection, that the accused was advised of his rights under Article 31 and he admitted that "in August he had issued two checks to the NCO Club knowing he did not have a bank account in the bank on which they were written" and that he had later "made them good." Again, therefore, the evidence is such that if the original checks had been produced they could have added nothing to the prosecution's case against the accused. Consequently, there is no likelihood that the court members drew any adverse inference from the defense failure or refusal to produce the checks.

Discerning no possibility of prejudice to the accused in trial counsel's ill-advised disclosure in open court of the notice to produce, we affirm the decision of the board of review.

LATIMER, Judge (concurring in the result):

I concur in the result.

I concur with the conclusion of the Chief Judge that the error committed by the trial counsel was the ▪ result of a misunderstanding of the law. However, I go one step further and state that counsel for both parties labored under the same mistake, and the erroneous concept was interjected into the case by defense counsel when he objected to the introduction of certain competent evidence. As stated by the Chief Judge, the trial incidents arose in the following manner: When trial counsel sought to introduce photostatic copies of two checks and the contents of two others issued to the NCO Open Mess, defense counsel objected on the basis that the proffered testimony was not the best evidence. The thrust of trial counsel's comments in answer thereto was that the best evidence could not be offered because the original checks had been returned to the accused, demand had been made on his counsel, the documents had not been produced, and the Government could not introduce the originals. Regarding the last-mentioned two checks, it was essential that the prosecution show they had been returned to the accused, but that had been otherwise established, and the statements that demand had been made on defense counsel seemed to have been of little significance at the time they were made, for no objection was made thereto and no request was made to have the court instructed to disregard them. The alleged error and its prejudicial effect appear to be an afterthought on appeal. Certainly, had defense counsel been of the opinion that the statements were improper at the time uttered or before the trial was finished, he had a duty to speak. Had an appropriate objection been taken at that time, the law officer could have instructed the court members that the accused was not required to produce the documents, that they must disregard the comment, and that they were not to draw any inference of guilt from the defense's failure to produce. As previously mentioned, part of the evidence which was introduced was not admissible until it was shown that the original check had been returned to the accused, but that had been established—in part through accused's admissions—and all information shown on the checks was properly before the court. Thus, the only possible prejudice must be assumed from the possibility that the court members would infer that accused was seeking to conceal incriminatory evidence. That assumption is dubious in light of the posture of the evidence of record, and trial counsel's statements themselves were not incrim-

**49**

inatory. Taking into account those circumstances, any impact on members of the court-martial is, at most, doubtful.

While the Federal civilian cases are divided on the question of whether comparable conduct on the part of the prosecuting attorney is error, there appears to be unanimity that, unless an objection is taken by the defense during the trial, the error cannot be raised on appeal. I prefer to base my affirmance on that ground. See Kritcher v United States, 17 F 2d 704 (CA 2d Cir).

Accordingly, I join in affirming the decision of the board of review.

FERGUSON, Judge (dissenting):

I dissent.

By their affirmance of this case, my brothers place the stamp of judicial approval upon a deliberate invasion by the trial counsel of the accused's constitutional privilege against self-incrimination, and render ineffectual the command of military law that the accused is at his own request, but not otherwise, a competent witness.

Tried by general court-martial, Sergeant DeBell was found guilty of larceny by check, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and numerous specifications of uttering worthless checks, in violation of Code, supra, Article 134, 10 USC § 934. Exercising his appellate powers, the convening authority disapproved the findings of guilty relating to three of the worthless check offenses. However, he approved the sentence. Following affirmance of the remaining findings of guilty and approval of a reduced sentence by the board of review, we granted accused's petition on the issue whether the trial counsel erred prejudicially in repeatedly making known to the court members that he had previously demanded that the accused produce certain of the checks involved in the case.

It appears from the evidence that the accused wrote many worthless checks directed to various persons. Upon their return from the bank upon which they were drawn, the accused paid to the holders the face value of the instruments involved and recovered the original checks. At his trial, the trial counsel sought to introduce photostatic copies of two of the checks involved. He attempted to prove the existence of two other checks by the testimony of the custodian of the Noncommissioned Officers' Open Mess concerning entries upon a club maintained register of unpaid checks.

The four checks related, respectively, to specifications 2, 4, 5, and 6 of Charge II. On each occasion on which the trial counsel sought to offer in evidence a photostatic copy of the check involved or otherwise to prove its existence, the defense counsel objected on the ground that the photostats or register entries were not the best evidence. Immediately following such objections, the trial counsel anounced *in the presence of the members of the court* that he had made written demand upon the accused prior to trial for the production of the documents. Other evidence was also adduced, demonstrating that the checks had been returned to the accused.

In Boyd v United States, 116 US 616, 6 S Ct 524, 29 L ed 746 (1886), the Supreme Court was initially confronted with the question whether a defendant could be required to produce incriminating documents within his possession. There, the prosecutor sought to invoke a statute authorizing the issuance of a *subpoena duces tecum* in such cases. In holding the statute unconstitutional, the Court concluded that the forced production of the papers would violate both the Fourth and Fifth amendments. Boyd v United States, supra, page 635. See also Wilson v United States, 221 US 361, 31 S Ct 538, 55 L ed 771 (1911).

The natural corollary of the foregoing proposition is the prohibition against informing the jury of the making of a demand upon the accused for the production of incriminating documents. McKnight v United States, 115 Fed 972 (CA 6th Cir) (1902). In that case, the district attorney sought to introduce in evidence a written copy of an agreement into which the defendant

and others had allegedly entered for a felonious purpose. Upon objection by the defense counsel to receipt of the copy, the prosecutor traced the original to McKnight's possession and demanded that it be produced. There was no compliance with this demand. Of the procedure, the Circuit Court of Appeals, in reversing the case, said:

"A perusal of the decisions of the supreme court shows that no constitutional right has been the subject of more jealous care then that which protects one accused of crime from being compelled to give testimony against himself. The right to such protection existed at the common law, and was carried into the constitution, that the citizen might be forever protected from inquisitorial proceedings compelling him to bear testimony against himself of acts which might subject him to punishment. In the present case the accused, in the presence of the jury, was, by direction of the court, called upon to produce the document which it was alleged contained the corrupt agreement which was the basis of the note given by irresponsible persons for the funds of the bank by McKnight's direction. The production of such a paper would have been self-incriminating to the defendant in the highest degree. It is true, the learned judge made no order requiring its production; *but the accused, by the demand made upon him before the jury, after proof tending to show his possession of the document, was required either to produce it, deny or explain his want of possession of the writing, or by his very silence permit inferences to be drawn against him quite as prejudicial as positive testimony would be.*" [115 Fed 972, at page 981.] [Emphasis supplied.]

The vigor of the *McKnight* decision has remained unchallenged through the years. Rocchia v United States, 78 F 2d 966 (CA 9th Cir) (1935); Fisher v State, 140 Neb 216, 299 NW 501 (1941); People v Sabourin, 283 App Div 722, 127 NYS 2d 506 (1954); Powell v Commonwealth, 167 Va 558, 189 SE 433, 110 ALR 90; Wigmore, Evidence, 3d ed, § 2268. Indeed, my

brothers concede that the trial counsel's declarations in the presence of the court were erroneous. However, Chief Judge Quinn concludes that prejudice to the accused's substantial rights is not present and Judge Latimer invokes the doctrine of waiver. Cited as authority for the Chief Judge's position are Himmelfarb v United States, 175 F 2d 924 (CA 9th Cir) (1949); Gridley v United States, 44 F 2d 716 (CA 6th Cir) (1930), and Hanish v United States, 227 Fed 584 (CA 7th Cir) (1915).

The circumstances in each of those cases safely distinguish them from the situation presented in McKnight v United States, supra, and that now before us. Thus, in Himmelfarb v United States, supra, the only question involved was whether the service upon the defendants in the presence of the jury of a *subpoena duces tecum* brought the McKnight doctrine into play. The Court of Appeals disposed of the matter stating, at page 944:

" . . . It was clearly improper for the marshal to serve the defendant in the court room in the presence of the jury; however, there is support for the court's conclusion that the defendant did not suffer prejudice thereby, the court stating that *there is no showing that the jurors knew of the service and, too, that most likely they didn't;* the court immediately quashed the subpoena." [Emphasis supplied.]

In the *Gridley* case, the demanded documents were neither material nor incriminating, Gridley v United States, supra, at page 736, while in *Hanish,* the letters were not incriminating on their face. Hanish v United States, supra, at page 586.

Here, however, as in *McKnight,* supra, the documents sought in the presence of the court were the very instruments used in the crime. The failure of the accused to comply with the demand could only be taken as meaning that their production would be inimical to his cause, and it matters not that the comment resulted from a defense objection. McKnight v United States, supra. Moreover, this Court has repeatedly held that violation of an ac-

cused's rights against self-incrimination constitutes general prejudice and that, the breach having been established, reversal must follow. United States v Josey, 3 USCMA 767, 14 CMR 185; United States v Williams, 8 USCMA 443, 24 CMR 253; United States v Nowling, 9 USCMA 100, 25 CMR 362.

Finally, I can only regard the trial counsel's conduct in this case as a deliberate attempt to invade the accused's constitutional protection. It is a fundamental rule in our system that photostatic copies are admissible as duplicate originals without regard to the production of the documents which they represent. Manual for Courts-Martial, United States, 1951, paragraph 143a(1). And once a writing is shown to be in the accused's possession, secondary evidence is admissible without requiring production of the original. Manual, supra, paragraph 143a(2). As counsel seemed otherwise well informed concerning the Manual and the best evidence rule, are we to impute to him complete ignorance concerning the Manual's succinct discussion of the doctrine? I think it more likely that he consulted this military vade mecum diligently. Thus, his insistence on making a totally unnecessary demand and thrice reiterating it in the record can only be characterized as resulting from a determination, by fair means or foul, to see this accused convicted.

With regard to accused's waiver of the point by failing to object to the matter at the trial, I can only reply that the doctrine has not been inflexibly applied by this Court. Here, we are concerned with a basic right and we said in United States v Kowert, 7 USCMA 678, 23 CMR 142, at page 682, "it would be manifestly unjust if we applied the ordinary rule of waiver."

In sum, then, I am certain this case falls precisely within the area delineated in McKnight v United States, supra. As it constituted a deliberate invasion of the accused's right right against self-incrimination, conferred by Amendment V, United States Constitution, and confirmed by Code, supra, Article 31(a), 10 USC § 831, prejudice is apparent. United States v Williams, supra; United States v Nowling, supra. As was said by the Virginia Supreme Court of Appeals in Powell v Commonwealth:

"To demand from the accused a document from which his guilt may be inferred is scarcely less harmful than to place him upon the stand and to ask him if he is guilty." [Powell v Commonwealth, supra, 189 SE 433, at page 441.]

I would reverse the decision of the board of review with respect to their affirmance of findings of guilty of specifications 4, 5, and 6.